THE ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

MARGARET O'KEEFE, Admx.

*Opinion filed November 1, 1897.*

| 168 | 115 |
| 89a | ²349 |
| 168 | 115 |
| 190 | ²486 |
| 190 | ²497 |
| 168 | 115 |
| f99a | ²525 |
| 168 | 115 |
| 106a | ²292 |
| 106a | ²294 |

1. CARRIERS—*elements necessary to warrant recovery for death by collision.* To warrant a recovery against a railroad company for the negligent killing of the plaintiff's intestate in a collision while riding upon the defendant's train, the plaintiff must at least establish the facts that the deceased was upon the train as a passenger and that he was using due care for his safety.

2. SAME—*one does not become a passenger until received as such by the carrier.* One does not become a passenger until he has placed himself in charge of the carrier for transportation and the carrier has expressly or impliedly accepted him for carriage, and the mere fact that he has purchased a ticket or holds a free pass does not of itself constitute him a passenger.

3. SAME—*what acts will not constitute one a passenger.* One boarding the front platform of the baggage car of a moving train after it has left the station, intending to take passage but without the invitation or consent of any authorized agent of the railroad company, does not, by such act alone, become a passenger, although he holds a free pass over the company's line. (CARTER, J., dissenting, holds it was a question for the jury.)

4. EVIDENCE—*what does not tend to show that carrier accepted person as a passenger.* The fact that the engineer and conductor knew

that a person, who was a few minutes afterwards negligently killed in a collision, had boarded the moving train between the engine and the baggage car, but did not know who he was or for what purpose he was there, does not tend to show that the railroad company had accepted such person as a passenger. (CARTER, J., dissenting.)

*Illinois Central R. R. Co.* v. *O'Keefe*, 63 Ill. App. 102, reversed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Union county; the Hon. JOSEPH P. ROBARTS, Judge, presiding.

WILLIAM H. GREEN, (JAMES FENTRESS, of counsel,) for appellant:

The presumption which arises that a person on a train used for carrying passengers is, in the absence of countervailing circumstances, a passenger and rightfully there, may be rebutted; and it does not apply to one seen to go on the platform of a mail car, or of some other car not run for the accommodation or use of passengers. Ray on Negligence of Imposed Duties, 5.

If a person solicits and secures free transportation, or if he rides upon a part of the train from which passengers are excluded, or takes passage upon a train not allowed to carry passengers, knowing that this act is against the rules of the carrier and in permitting it the conductor is disobedient, he is guilty of a fraud and not entitled to a passenger's rights. Ray on Negligence of Imposed Duties, 15.

A carrier undertakes to carry passengers safely if they place themselves under its direction in particular places prescribed for the purpose, and it will not be held liable for damages accruing to an interloper who, by fraud or unnoticed by it, hides himself where he is not liable to be discovered. Ray on Negligence of Imposed Duties, 15.

One who without permission, but with the knowledge and acquiescence of a railroad superintendent, rides upon

a train which he knows no one not an employee is allowed to ride upon, is a mere licensee, to whom the company owes no duty. Ray on Negligence of Imposed Duties, 16.

Common carriers have the right to prescribe reasonable rules and regulations for the convenience, comfort and safety of themselves and passengers. *Railroad Co.* v. *Yarwood*, 15 Ill. 472.

The duty of the passenger is reciprocal. He must conform to the rules the carrier prescribes for the safety of the common enterprise. He must omit no reasonable precaution which is incumbent on him, so far as concerns the maintenance of such safety. Wharton on Negligence, chap. 9, sec. 353.

A carrier, in undertaking to carry passengers safely, undertakes to carry them safely if they place themselves under his direction in particular places prescribed for the purpose. Wharton on Negligence, sec. 354.

WILLIAM A. SCHWARTZ, (KARRAKER & LINGLE, of counsel,) for appellee:

Proof that an injury resulting as the proximate cause of an act which, under ordinary circumstances, would not, if done with due care, have injured any one, is enough to make out a presumption of negligence. And this is held to be the rule even where no special relation, like that of passenger and carrier, exists. *Railway Co.* v. *Cotton*, 140 Ill. 494.

A passenger who goes from one car to another of a moving train to find a seat, does not, while so upon the platform, take the risk of collision with another train, and when his conduct does not contribute to any injury from such collision he may recover from the company for its negligence. *Dewire* v. *Railroad Co.* 148 Mass. 443.

Judgments of the trial court will not be reversed where the evidence of the successful party, when considered by itself, is clearly sufficient to sustain the verdict. *Shevalier* v. *Seager*, 121 Ill. 569.

Care and negligence are questions of fact for the jury. *Lowry* v. *Lynch*, 57 Ill. App. 323.

The contract of carrier and passenger may be implied from slight circumstances. *Railroad Co.* v. *Williams*, 140 Ill. 288.

Neither entry into cars upon a railroad, nor payment of fare, is essential to create the relation of carrier and passenger. *Gordon* v. *Railroad Co.* 40 Barb. 546.

Every person being carried by the express or implied consent of the carrier, upon a public conveyance usually employed in the carriage of passengers, is presumed to be lawfully upon it as a passenger, and the same vigilance must be exercised to guard him against injury when he is carried gratuitously as when he pays the usual fare. Hutchinson on Carriers, (2d ed.) sec. 566.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This case was before this court on a former appeal, and the judgment appealed from was reversed. (*Illinois Central Railroad Co.* v. *O'Keefe*, 154 Ill. 508.) The case has been again tried, resulting in a verdict and judgment for $3000, and the Appellate Court has affirmed that judgment.

The facts will be found stated in the former report of the case, and will not be repeated in full in this opinion. The ground upon which defendant was charged at the trial with liability for the death of O'Keefe was, that he became a passenger on defendant's train from Anna to Carbondale, and was killed through the negligence of defendant in the collision with the other train. At the close of the evidence the defendant asked the court to instruct the jury that such evidence was not sufficient to authorize a verdict for the plaintiff, and that they should find the defendant not guilty. The instruction was refused and the defendant excepted. The contention here is, that the instruction should have been given because the evidence did not fairly and legally tend to prove that

deceased was a passenger or that he was exercising ordinary care and prudence when killed, while it was necessary for the plaintiff to establish both these propositions by some affirmative evidence in order to recover.

Considering the latter of these propositions first, a reference to the opinion of the court upon the former appeal shows that the judgment was reversed for error of the court in instructing the jury, as matter of law, that it was not negligence, of itself, for O'Keefe to ride on the steps or platform of the car. It was further said that an assumption of negligence on the part of the defendant, or that the deceased was not negligent, could not be stated, under the facts of the case, as a matter of law. The evidence did not greatly differ in the two trials, and we adhere to the previous holding that on the question of negligence the case might properly have been submitted to the jury.

It was also necessary for the plaintiff to prove that the relation of passenger and carrier existed between the deceased and the defendant. This relation which was claimed to exist is a contract relation. A railroad company holds itself out as ready to receive and carry, and is bound to receive and carry, all passengers who offer themselves as such at the places provided for taking passage on its trains, and who take such passage in the cars provided for passengers. When one so presents himself the contract relation under which he acquires the rights of a passenger may be either express or may be implied from the circumstances. If a person goes upon cars provided by the railroad company for the transportation of passengers, with the purpose of carriage as a passenger with the consent, express or implied, of the railroad company, he is presumptively a passenger. (Elliott on Railroads, sec. 1578.) Both parties must enter into and be bound by the contract. The passenger may do this by putting himself into the care of the railroad company to be transported, and the company does it by expressly or

impliedly receiving him and accepting him as a passenger. The acceptance of the passenger need not be direct or express, but there must be something from which it may be fairly implied. One does not become a passenger until he has put himself in charge of the carrier and has been expressly or impliedly received as such by the carrier. (*Bricker* v. *Railroad Co.* 132 Pa. St. 1; *Webster* v. *Fitchburg Railroad Co.* 161 Mass. 298; Elliott on Railroads, sec. 1581.) Deceased was the holder of a free pass on the road, but that fact alone would not create the relation of passenger and carrier. The purchase of a ticket does not make one a passenger unless he comes under the charge of the carrier and is accepted for carriage by virtue of it. If a ticket holder should offer himself as a passenger and should be refused transportation there would be a liability for consequent damages, but it would not be a liability to him as a passenger or on account of the relation of passenger and carrier, but would be a liability for the refusal to enter into that relation and to permit him to become a passenger.

The uncontroverted evidence bearing upon the question whether O'Keefe became a passenger was as follows: He lived about three hundred yards north and fifty yards east of defendant's station at Anna. The limited vestibule train on defendant's road came from the south and stopped at the station while he was sitting at the table at home, eating breakfast. The train consisted of a baggage car, two coaches and a sleeping car. It was a solid vestibuled train, the vestibules filling the spaces between the cars, with a door at each entrance and exit to and from the platforms of the passenger coaches. These doors are opened at the stations to discharge passengers who have reached their destination and to receive those desiring to become passengers, and these are the places where passengers present themselves to take passage. While this train was at the station at Anna it was prepared for the reception of passengers who desired to be

transported to other stations, by opening the doors, and passengers for Anna were discharged at the station. When the doors are closed a person on the outside can not get in, and when the business at that station had been done the doors designed for the admission of passengers were closed, and the train left the station as a solid train, closed and inaccessible up to the platform next the tender, in front of the baggage car. When the train was moving from the station O'Keefe took his hat and ran out of the door, and ran to the railroad track and south toward the approaching train. When he met the train it was going three or four miles an hour, and he climbed on the platform next the tender, at the front end of the baggage car. As he passed his house his wife saw him standing on the platform with his back against the baggage car door. The engineer and conductor saw him climb on the platform but did not see him afterward, and the conductor did not know who he was. He was not seen after his wife saw him until he was found dead, sitting on the step of the platform, holding the guard-rail with one hand. When found he had a piece of paper in one hand and a pencil was lying on the ground. After leaving Anna the conductor went through the train, commencing at the north end of the first passenger coach next the baggage car and going the entire length of the train. He then came back, unlocked the door to the baggage car, and went in, as he said, to see about the person who got on the platform, and, seeing the other train approaching, he and the baggageman jumped off through the side door.

The question is whether these facts fairly tend to establish the relation of passenger and carrier between O'Keefe and the defendant, by showing that he had put himself in the care of the defendant as a passenger, and had been expressly or impliedly received and accepted as such by the defendant through any authorized agent. We think that they do not. He did not go upon the train at

the station provided for the reception of passengers, and did not take any place provided for the reception, accommodation or carriage of passengers. He did not comply with any of the ordinary customs under which defendant held itself out as ready to receive and carry passengers or under which they are received or carried. It is said that he no doubt tried to open the baggage car door, and the inference intended is, that he tried to put himself in charge of defendant as a passenger, in a proper place. There is no evidence of the supposed fact, and if there were it could make no difference. It will certainly not be claimed that defendant was bound to have the baggage car door open so as to give access to its passenger coaches by way of the baggage car. But even if that were a wrong to him, he could not become a passenger by attempting to get in that door any more than if he had attempted to open one of the vestibule doors which was locked, and had failed. He had not put himself in the care of the defendant as a passenger. Of course, the fact that the engineer knew that deceased climbed upon the train would not make him a passenger, since an engineer is not authorized to act for the defendant in such a matter or to accept passengers. Nor do we think that the mere fact of the conductor knowing that some one had boarded the moving train on the platform between the tender and baggage car, and might still be there, is evidence tending to show that defendant accepted him as a passenger. The conductor did not know who he was or what he was there for,—whether as a passenger or otherwise. As conductor he performed the usual duties after leaving the station, and had not reached this platform next the tender when the accident occurred. He had done nothing in the matter one way or the other. The train was moving slowly when O'Keefe climbed on. But that fact is only material on the question of negligence on his part in boarding a moving train. The train had left the station, and there would be no difference, so

far as creating a relation of passenger and carrier was concerned, whether he got on there or at some other place between stations where the train was moving slowly. Of course, he might have ridden on the platform in safety but for the collision, and so also he might on the engine or tender, or elsewhere on the train where passengers are not carried. That fact concerns only the question of negligence, and is not material on the question whether he became a passenger.

As we have concluded that there was no evidence tending to establish one necessary element for a recovery,—that the deceased was a passenger on defendant's train,—it follows that for such failure of proof the instruction asked should have been given.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.                    *Reversed and remanded.*

Mr. Justice Carter, dissenting:

I do not concur in the decision rendered by this court in this case. It is held, as it was held when this cause was before us at a former term, (154 Ill. 508,) that it was a question for the jury to determine whether the deceased was himself guilty of negligence or not, and the judgment below is not reversed for lack of evidence showing due care on his part for his own safety. So far I am satisfied with the decision, but I dissent from the conclusion reached that there was not sufficient evidence to go to the jury tending to prove that the deceased was a passenger on appellant's train when he was killed. It is established that the collision of the two trains which caused O'Keefe's death was caused by the negligence of appellant. This question is not controverted, but this, the second, judgment for appellee is reversed on the sole ground that, considered as a question of law, not of fact, O'Keefe was not a passenger at the time of the accident. It seems clear to me that if he was not a passenger he was a tres-

passer. If not, what was his relation to the company? Now, if he was a trespasser he was guilty of negligence in getting upon the train under the circumstances shown by the evidence and riding on the platform as he did. But it has been twice held in this case that that was a question of fact, upon which this court cannot set aside the finding of the jury. So, also, in my opinion, is the judgment below conclusive upon the question whether he was a passenger or not. That is equally a question of fact, under the evidence. When the jury found that O'Keefe was not a trespasser and was in the exercise of due care for his own safety, and when this court confirms that finding, it logically follows, as it appears to me, that he was rightfully on the train as a passenger, for there was no pretense that he was there in any other capacity.

The evidence shows that O'Keefe had a contract with appellant to deliver to it a large number of railroad ties, and in connection with this contract had received from the company a pass over its road to enable him to travel to and from different points in carrying out the terms of the contract. He had occasion frequently to pass over appellant's road, using this pass, and sometimes, with knowledge of the trainmen, riding in the baggage car. For purposes connected with his contract relating to the delivery of ties, it became important on the morning in question that he should take the train upon which he afterward met with the accident, at Anna, for another station on the road. Failing to get to the depot in time to take the train, he was compelled, to avoid being left, to climb onto the forward platform of the baggage car while the train was passing him and was moving at the rate of three or four miles an hour, the train being a fast one and the passenger coaches vestibuled. The engineer and conductor saw him get upon the train, but the conductor testified that he did not know at the time that it was O'Keefe, but he did not do anything to indicate that he objected to the carrying of O'Keefe in the manner

now complained of.  About fifteen minutes after the train had left Anna the collision occurred in which he was killed.  The deceased was found sitting upon the steps, crushed between the forward end of the baggage car and the tender.  Whether, after getting upon the train, he could have passed through the door at that end of the baggage car and by that means have proceeded to the passenger coaches was a controverted question under the evidence.  It is apparent that O'Keefe entered upon the train for the purpose of taking passage and of becoming a passenger.  He was not injured in the act of boarding the train, so that it was immaterial whether he got upon the train at the station or afterward when it was in motion, unless it could be considered as affecting the question whether by getting upon the train where he did he became a passenger or not,—and that would be a question of fact, settled in the Appellate Court.  The jury were authorized, from the evidence, to find that he did all he could, under the circumstances, to become such passenger; that he had the right of passage on the train; that he was upon the train with the implied consent of appellant, and that while on such train, and before he could enter a passenger coach provided for the carriage of passengers, he was killed through the negligence of appellant.  If they so found, then I think it follows that they must have found that he was a passenger.  The jury had the right to find, from all the circumstances, including the fact that after the conductor saw him get on the front end of the baggage car he went from the other end of that car through the train taking the fares of passengers without saying anything to O'Keefe and without interfering with him in any way, that he did not object to his riding in that way,—that is, to find implied consent on the part of the company.

In Thompson on Carriers, 42, 43, it is said: "The whole matter seems to depend largely upon the intention of the person at the time he enters the boat or cars," etc.  (See,

also, *North Chicago Street Railroad Co.* v. *Williams,* 140 Ill. 275, and *Chicago, Burlington and Quincy Railroad Co.* v. *Mehlsack,* 131 id. 61.) It is said by Elliott in his late work on Railroads, (vol. 4, sec. 1578): "We think it is safe to say that the general rule is that every one on the passenger trains of a railroad company, and there for the purpose of carriage, with the consent, express or implied, of the company, is presumptively a passenger."

It is, I think, clear from the authorities that it was a question of fact whether or not the deceased was a passenger at the time he was killed, and that this question does not come within the rule laid down by this court in *Simmons* v. *Chicago and Tomah Railroad Co.* 110 Ill. 340, and other cases, that "when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is so insufficient to support a verdict for the plaintiff that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant."

By the verdicts of two juries, followed by two judgments of the trial court and two judgments of affirmance by the Appellate Court, it has been determined as a question of fact, from the evidence, that the relation of carrier and passenger existed between the appellant and the plaintiff's intestate. The first judgment was reversed by this court without any intimation that upon the record (substantially the same as the one now before us), the plaintiff had no case, and the cause was sent back for another trial. For what purpose? Simply for the plaintiff to be told, after such trial and another weary journey to this court, that she never had any case to be submitted to a jury.