## Patrick O'Donnell, Adm'r, v. The Chicago & North-western Ry. Co.

1.   VERDICTS—*When One May Be Directed for the Defendant.*— Where, from the evidence in an action for personal injuries the jury could not reasonably reach any other conclusion than that the deceased met his death by his own negligence, a verdict for the defendant is properly directed.

2.   CARRIERS OF PASSENGERS—*Relation of Carrier and Passenger is a Contract Relation.*—The relation of carrier and passenger is a contract relation.   Both parties must enter into and be bound by the contract.   The passenger may do this by putting himself into the care of the railroad company to be transported, and the company does it by expressly or impliedly receiving and accepting him as a passenger.

3.   SAME—*Mere Fact that a Party Has a Ticket Does Not Create the Relation.*—The mere fact that a party has a ticket and intends to take a train does not create the relation of carrier and passenger. Where there is no formal delivery of the passenger's person to the carrier, the circumstances must be such as to warrant an implication that he has offered himself to be carried, and that the offer has been accepted by the carrier.   If he has not been expressly or impliedly received as a passenger by the carrier, the relation does not exist.

4.   SAME—*Whether Relation Exists is a Question of Law.*—Whether the uncontroverted facts show the relation of carrier and passenger is a question of law.

**Trespass on the Case.**—Death from negligent act.   Error to the Circuit Court of DuPage County; the Hon. CHARLES A. BISHOP, Judge presiding.   Heard in this court at the October term, 1902.   Affirmed. Opinion filed January 27, 1903.

ALPHEUS B. ST. JOHN, attorney for plaintiff in error.

S. A. LYNDE, attorney for defendant in error; A. W. PULVER and L. W. BOWERS, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

This is a suit brought by the administrator of the estate of Jeremiah M. Terwilliger, deceased, to recover, for the benefit of the next of kin, damages for his death, which is alleged to have been caused by the negligence of the railway company. There was a jury trial of issues formed by the declaration and a plea of not guilty. At the close of plaintiff's proofs the court directed a verdict of not guilty, and such verdict was rendered. This is a writ of error sued out by plaintiff to reverse a judgment on said verdict. The same accident is involved here as in the suit brought by Mrs. Terwilliger against the National Masonic Accident Association, reported in 98 Ill. App. 237, and 197 Ill. 9, but the proof here differs slightly from what is stated in those opinions.

Terwilliger was killed May 16, 1898. At that time defendant had elevated its tracks at and north of Ravenswood, a suburban station in Chicago, but the station house on the east side of its grade there had not been raised. Defendant had three tracks there. South-bound trains took the east track, and there was a platform east of it for the use of passengers. North-bound trains took the west track, and there was a platform west of it for the use of passengers. A planked way crossed the track, connecting the platforms. The platforms each extended for an entire block north and south, and access to the west platform could not only be had by coming up stairs at the station house and crossing the tracks on the planked way, but there were also stairways at each end of each platform connecting with the street below. Terwilliger and a friend, Walter Chadband, lived at different stations north of Ravenswood, and on that evening attended a Masonic meeting at Ravenswood, at a hall east of the railway. Shortly before a certain north-bound train was due, Chadband left the

society hall, followed by Terwilliger. Chadband reached the station on the east side, crossed the tracks to the west platform, waited for the train, and when it came in got upon the rear platform of the rear car. As he turned to pass into the car door he saw Terwilliger coming up the steps by the station house and coming upon the platform east of the tracks in front of the station house. Chadband called out, "Come along, Jerry, you have plenty of time," or "Hurry, come on, Jerry, you have plenty of time," or words to that effect. Terwilliger, who was then sixty-five years old, came running across the tracks to the east side of the train, the side away from the passenger platform for north-bound trains. Taking the view of the testimony most favorable to the plaintiff, Terwilliger reached the rear end of the rear car and caught hold of the handle-bar the instant before the train started. Chadband did not know whether Terwilliger crossed the tracks upon the plank walk. Terwilliger sprang up to get upon the step of the car but failed. At no time did he get foot or knee or any part of his body upon the step of the car. He retained his hold upon the handle-bars, and continued to endeavor to get on the train. Chadband did not know or remember what Terwilliger did with his feet, but supposed he ran as long as he could do so, and that after the speed of the train became too great for that, his feet then dragged upon the ground. Chadband came down on the car steps and took hold of Terwilliger by the back of his collar and tried to help him on and could not. Chadband then got his arm under Terwilliger's arms, and could not get him up. Chadband then released one hand and knocked on the car window to get help within the car, but did not succeed. When Chadband could not hold Terwilliger any longer he let go, and Terwilliger said, "I can not hold on any longer," and let go of the handle-bars and fell. His head struck an iron bridge over a subway, fracturing his skull and causing his death. This was about two and one-half blocks north of where Terwilliger started to get on the train.

Each count of the declaration contained the material averment that Terwilliger was in the exercise of due care for his personal safety. We are of opinion the proofs showed this was not true, but that he was guilty of negligence which caused his death. When he attempted to spring upon the steps after the car started, and found he could not, and the car was rapidly increasing in speed, the commonest prudence required him to let go the handle bars and abandon his attempt to board the train. This is true, regardless of whether he was negligent in attempting to get upon the car at the side away from the platform provided for those who wished to take the north-bound train. We are of opinion the jury could not reasonably reach any other conclusion than that Terwilliger's death was the result of his own negligence. Therefore the court properly directed a verdict for defendant. (Block v. Swift, 161 Ill. 107.)

The declaration did not expressly charge that Terwilliger was a passenger of defendant, or had been received as a passenger by defendant, but each count charged that he desired to take passage on the train as a passenger, and reached the train for that purpose. One count charged he had a ticket issued by defendant, entitling him to ride on that train; some counts charged that Terwilliger and others had long been accustomed to leave and enter the north-bound train at that place on the east side, with the knowledge, consent and approval of defendant. One count charged that defendant had long kept the surface of defendant's roadway and station grounds there level and smooth and free from obstruction, and that at this time and place the station grounds were dark and that defendant had permitted the surface of the ground and roadway to become and remain broken, rough and uneven. Defendant was charged to have been negligent in starting its train before Terwilliger was safely on it; in starting its train without giving Terwilliger a reasonable time to safely get upon it; in omitting to hold the train a reasonable time for Terwilliger to enter it in safety; in starting the train before

Terwilliger could get upon it; and in permitting the sur-
face of the ground and roadway to be and remain broken,
rough and uneven. These negligent acts and omissions by
defendant are charged to have caused Terwilliger to be
thrown to the ground and killed. Each count, therefore,
was based upon the breach of duties which the law did not
cast upon defendant unless the relation of carrier and pas-
senger had arisen between defendant and Terwilliger. If
the proofs did not establish that relation, no negligence by
defendant was shown, for there is no proof any servant of
defendant knew Terwilliger was attempting to get upon
the train. The proof was there was no servant of defend-
ant on that side of the train. There is no proof the stay of
the train at the station was not long enough so that every
person on the platform intending to take passage got upon
the train in safety.

The relation of carrier and passenger is a contract rela-
tion. Both parties must enter into and be bound by the
contract. The passenger may do this by putting himself
into the care of the railroad company to be transported,
and the company does it by expressly or impliedly receiv-
ing and accepting him as a passenger. If the acceptance
of the passenger is not direct or express, there must be
something from which his acceptance as a passenger may
be fairly implied. If a person is at the place provided for
passengers, such as the waiting room or platform at the
station, with the intention of taking passage, and has a
ticket, he is entitled to the rights and privileges of a pas-
senger. It is the duty of a railroad company to receive
and carry those who present themselves at the time and
place provided for passengers requiring transportation.
When a passenger presents himself at the proper place to
be transported, his right to care and protection begins.
But he must have placed himself under the care of the rail-
road company, so that the circumstances will warrant an
understanding on the part of the company that he is a
passenger and under its care as such. He must be under
the control of the carrier in order to be entitled to its care

as a passenger. He must be at some place which is under the control of the carrier and provided for passengers, so that it may exercise the high degree of care exacted from it; and the mere fact that he has a ticket and intends to take a train does not create the relation of carrier and passenger. Where there is no formal delivery of the passenger's person to the carrier, the circumstances must be such as to warrant an implication that he has offered himself to be carried, and that the offer has been accepted by the carrier. If he has not been expressly or impliedly received as a passenger by the carrier, the relation does not exist. These principles are fully expounded, and fortified by authority, in I. C. R. R. Co. v. O'Keefe, 168 Ill. 115, and C. & E. I. R. R. Co. v. Jennings, 190 Ill. 478.

Whether the uncontroverted facts show the relation of carrier and passenger is a question of law. (C. & E. I. R. R. Co. v. Jennings, *supra*.) In this case the railroad company had erected a station house for the reception of those who wished to wait there for a train. It had also provided means for reaching its platforms without entering or going by the station house. It had provided a platform next to the south-bound track, and between it and the station house, at which south-bound passengers might alight from or enter their trains; and another platform west of all its tracks where passengers might alight from or enter north-bound trains. It is clear passengers at the station house or on the east platform who wished to go north were invited to cross the tracks upon the plank cross-walk and to go to the west platform to take the north-bound train. The company had no fence between its west track and its center track, nor any gates or bars on the east steps of its north-bound trains, which would prevent persons from leaving or entering its north-bound trains on the east side. The proof showed that passengers coming from the south and persons intending to go north, usually alighted and entered at the platform on the west side, but that deceased and others frequently did alight from and enter north-bound trains on the east side. There was no proof

the company consented to or approved such acts, except the inference to be drawn from the fact it had done nothing which would make such a course by travelers impossible. The company had provided no conveniences for passengers on that side of its north-bound trains. It had erected a platform on the west side, the purpose of which was obvious to all travelers. Its servants who assisted passengers to alight and enter were not stationed on the east side. While conceding the question is not free from difficulty where, as here, the person intending to take passage on a train on the most western track came from the street below by the station house to the platform east of all the tracks, we are disposed to hold he should have gone to the west platform and sought entrance to the train at the place provided by the company for that purpose; and that when he came to the train at the place where the company had not invited him to enter, and where his previous experience must have taught him its servants were not in attendance, he did not become a passenger and was not impliedly received as such. No servant of the company knew he was there, and he was not expressly received as a passenger. Not having been expressly or by implication received by defendant as its passenger, the railway company owed him none of the duties relied upon and was guilty of no breach of duty toward him in starting and running its train as it did. As the jury would not have been warranted by the proof in finding defendant guilty of the negligence charged, the court properly directed a verdict for defendant.

The question by defendant to Chadband, whether there was anything to prevent Terwilliger loosing his hold on the handrail and letting the train go without him, was proper cross-examination upon his testimony that he had hold of Terwilliger by the back of the collar, and then under both arms, and then under one arm; and if not, still it did plaintiff no harm because the jury did not decide the case. Plaintiff should have been permitted to show that deceased had upon his person immediately after his death a twenty-five ride ticket issued by defendant entitling him to ride on that train, because that is one of the facts which tends to

establish the relation of carrier and passenger. But the purchase of a ticket does not make one a passenger unless he comes under the charge of the carrier and is accepted for carriage by virtue of it. (I. C. R. R. Co. v. O'Keefe, *supra*.) If proof that the ticket was found upon the person of deceased had been admitted, still the relation of carrier and passenger would not have been established. Plaintiff therefore was not injured by the ruling.

The judgment is affirmed.