## Chicago, Rock Island & Pacific Railroad Company v. Michael F. Moran, by next friend.

### Gen. No. 4,354.

1. PASSENGER AND CARRIER—*what does not establish relation of.* Where a boy boards a railroad train for the purpose of selling newspapers under a custom which permitted such sale but did not contemplate continuance upon such train while in motion, he does not become a passenger, in the absence of his declaration of an intention so to do, notwithstanding he may have in his pocket sufficient money with which to pay his fare.

2. EJECTION FROM TRAIN—*when railroad company not liable for injuries resulting from.* A railroad company is not liable for the act of its brakeman, acting without authority, in ejecting a trespasser from a moving train.

Action on the case for personal injuries. Appeal from the Circuit Court of Will County; the Hon. CHARLES B. GARNSEY, Judge, presiding. Heard in this court at the April term, 1904. Reversed and remanded. Opinion filed November 23, 1904.

SNAPP, HEISE & DIBELL, for appellant; R. A. JACKSON and W. T. RANKIN, of counsel.

J. W. DOWNEY, for appellee.

MR. PRESIDING JUSTICE FARMER delivered the opinion of the court.

Michael F. Moran, a boy fourteen years and three months old, was engaged in peddling newspapers in the city of Joliet, mornings and evenings, before and after school. He was accustomed to go to the depot every morning to sell papers to passengers on a passenger train of appellant which arrived at Joliet at 5:20 from the west. Other boys were engaged in the same business and they would appoint certain coaches to each boy. They were in the habit of getting on the train when it stopped, to sell their papers. On the morning of January 1, 1902, Michael F. Moran, as was his custom, was at the depot of appellant on the arrival of the 5:20 east-bound train for the purpose of selling papers to passengers thereon. While so engaged and while the train was standing still, he went upon the steps of the chair car. It was a vestibuled car and the door, which was at the top of the steps, was closed. A passenger came out, opened the door and asked for a paper. Moran produced the paper and says that a train employee, whom he called a porter but who proved to be a brakeman, grabbed the paper out of his hand and hallooed " two for a nickel;" that he then had to get another paper out of his sack and by the time he did so the train was in motion and going so fast that he was afraid to jump off, and he sat down on the second step of the coach. He says he knew the train would stop at the E. J. & E. crossing, and intended to stay on till it stopped, but that the train employee who was dressed in a uniform, opened the vestibule door and told him to get off; that at first he didn't think he meant it and made no movement to obey, and that the man then turned quickly toward him and while within three or four feet of appellee told him in an angry tone to get off quick. He says the words and manner of the brakeman so frightened him that he jumped. It was so dark he could not see where he was going to alight and he fell so that the wheels of the car passed over one foot and so cut and mashed it that the greater portion of it had to be amputated. He brought

suit by his next friend against the company for damages, and recovered a verdict and judgment for $4,000, from which the defendant appealed.

The first question necessary to be considered in order to arrive at a determination of the rights of the parties is as to the capacity in which appellee was on appellant's train, whether as a passenger or trespasser. There is no direct averment in the declaration that he was a passenger. Some of the counts charge generally that he was lawfully on the train; others that according to a custom, and with the knowledge and consent of appellant, he was on the train for the purpose of selling passengers thereon newspapers. It is contended by counsel for appellee, first, that he was a passenger; second, that even if he were a trespasser, under the facts appellant is liable. Both contentions are denied by appellant.

" A passenger, in the legal sense of the term, is one who travels in some public conveyance by virtue of a contract, express or implied, with the carrier as to the payment of fare or that which is accepted as an equivalent therefor. The relation of carrier and passenger is dependent upon the existence of a contract of carriage between the carrier and the passenger, made by themselves or by their respective agents." 5 Am. & Eng. Ency. of L., 486.

" The relation of carrier and passenger begins when one puts himself in the care of the carrier, or directly within its control, with a *bona fide* intention of becoming a passenger, and is accepted as such by the carrier." Ibid. 488.

Our Supreme Court held in I. C. R. R. Co. v. O'Keefe, 168 Ill. 115, that the relation of carrier and passenger is a contract relation that both parties must enter into to be bound by, and said: " The passenger may do this by putting himself into the care of the railroad company to be transported, and the company does it by expressly or impliedly receiving him and accepting him as a passenger. The acceptance of the passenger need not be direct or expressed, but there must be something from which it may be fairly implied. One does not become a passenger until

he has put himself in charge of the carrier and has been expressly or impliedly received as such by the carrier." In Spannagle v. C. & A. R. R. Co., 31 Ill. App. 460, it was said: "No express contract being shown, before a duty rested upon the defendant the plaintiff must in some manner indicate his purpose of becoming such passenger, and place himself in charge of the carrier." See also O'Donnell v. C. & N. W. Ry. Co., 106 Ill. App. 287.

Under these definitions and rules we think there was wanting the necessary and essential elements to constitute appellee a passenger of appellant. Appellee testified that he had more than a dollar in his pocket and that when he discovered the train was going so fast as to make it dangerous for him to leave it while in motion, he intended to stay on until it stopped, and that he knew it would stop at the E. J. & E. crossing for the signal. Whatever intention he may have had in his mind, it is not pretended that it was communicated to appellant's servant, or that he did anything more than merely to sit down on the steps of the car to wait till it stopped at the E. J. & E. crossing, to indicate that he had any purpose or desire of becoming a passenger. When he went upon the train it was not for that purpose, and there is no evidence tending to show that he subsequently did or said anything that would bring him within the rules as to what is necessary to constitute a passenger. The mere fact that he had money in his pocket, could not, without his tendering or offering to pay his fare, alter his relation. Although he swears he had more than a dollar in his pocket, he does not say that he intended to pay railroad fare, but intended to get off when the train stopped at the crossing mentioned; but even if he had in his mind the intention to pay railroad fare, we think under the facts this would be immaterial, as there was no contract, express or implied, between him and the carrier. Gardner v. New Haven, etc., R. R. Co., 51 Conn. 143. If, as is claimed by appellee, every person on a passenger train is presumed to be a passenger until the contrary appears, the evidence in this case establishes the contrary. We can

reach no other conclusion than that appellee was a tres-
passer. It is argued by counsel that appellee had been in
the habit, with the knowledge and consent of appellant,
of going upon its trains to furnish its passengers with
newspapers, and that under the rule in I. C. R. R. Co. v.
Hopkins, 200 Ill. 122, appellant owed him the duty of using
at least ordinary care to avoid injuring him. There is, we
think, a very wide distinction between that case and this.
In the Hopkins case the injury occurred by the plaintiff
stumbling over a skid on defendant's platform over which
she was passing to serve the postal clerks on the train with
meals, as she had been in the habit of doing with the
knowledge and approbation of the railroad company for
several years. In this case appellee may have been in the
habit of getting upon appellant's train to serve its passen-
gers with newspapers with the knowledge and consent of
appellant, but even under these conditions it was his duty
to depart from the train before or when it started to leave
the station. There is no evidence that anything in the cus-
tom or practices of appellee in selling newspapers upon ap-
pellant's train authorized or justified him in remaining on
the cars or steps until the train should reach the E. J. & E.
crossing or any other place. There is nothing in the evi-
dence to show that appellee was in the habit of remaining
upon the train to sell newspapers until it was in motion, or
that appellant ever consented to his doing so, and even if
he did get upon the train as a licensee, he should not have
remained thereon until the train was in motion. To our
minds the evidence conclusively establishes that appellee
was a trespasser.

The question then arises, was the brakeman acting within
the line of his employment in ejecting trespassers from the
train, and is the railroad company liable for his wilful and
wanton acts in so doing. The rules of appellant concern-
ing the management of its trains and defining the duties
of those in charge were introduced in evidence and con-
ferred no authority on the brakeman to eject from the train
persons wrongfully thereon, except in cases where such

authority is delegated to the brakeman by the conductor, to whom the rules commit the management and control of the train. It has been almost universally held that brakemen on freight trains have not the implied authority to eject trespassers therefrom, and in the absence of express authority in such cases the railroad company is held not liable for such acts of brakemen. If the same rule is applicable to brakemen on passenger trains, then there can be no recovery under the evidence in this record.

We have spent much time in the examination of authorities cited in briefs of counsel on both sides, and in endeavoring to find additional cases, and whatever our own views may be as to what the law ought to be, we cannot resist the conclusion and conviction that by the great weight of authority a railroad company cannot be held liable for the acts of a brakeman, whether on a passenger or freight train, in forcing a trespasser from a moving train and thereby injuring him, unless it appears that the act is either within the express or implied authority of such brakeman. The case of C., R. I. & P. Ry. Co. v. Brackman, 78 Ill. App. 144, decided by this court, involved the liability of the company for the act of a brakeman on a freight train in forcibly ejecting a trespasser. In the opinion in that case will be found practically all the authorities directly in point on this question, where the train involved was a freight, and some relating to passenger trains. It is conceded by counsel for appellee that a railroad company is not responsible for injuries to a trespasser resulting from being forcibly expelled from a freight train by a brakeman where no authority is shown in the brakeman to expel trespassers, but it is contended that the rule is different with regard to passenger trains. We have diligently searched the books for authorities and precedents on this question, and find the rule established by the great weight of authority to be, that, in order to hold the employer liable it must appear from the evidence that the employee was acting within the usual scope of his authority and employment or that his act causing the injury was expressly directed or authorized

by the master or some one representing the master.   Cases
are to be found where the right to recover  by a trespasser
who was forcibly expelled from a train has been sustained,
but in most of them it will be found that it was  shown to
be the duty of brakemen to expel trespassers, or where in
the absence of any showing  at all on  the subject it was
held to be within the implied authority of the brakeman.
In I. C. R. R. Co. v. King, 179 Ill. 91, the company was
held liable to a trespasser who was injured by the wilful
act of a brakeman in dragging him from the brake rods of
a freight car in a wilful and reckless manner while the
train was in motion, and thereby injuring him.   In that
case, however, the brakeman testified that the instructions
to brakemen were to put trespassers off when found beat-
ing their way and the Supreme Court held that this con-
clusively showed the brakeman was acting within the scope
of his authority in putting the plaintiff off.   In K. C., Ft.
Scott & G. R. R. Co. v. Kelly, 36 Kansas, 655, the company
was held liable for the act of a brakeman in forcing a tres-
passer from the train, but it appears from the opinion of
the court that the evidence did not disclose what the duties
of the brakeman were on the defendant's road, and in the
absence of proof in that respect, the court held that under
the general scope of the brakeman's employment, he had
implied authority to remove trespassers.   These are not all
the cases that might be cited where liability has been sus-
tained on these grounds but are sufficient to illustrate the
reasons for adopting this view.   There are a few cases hold-
ing a railroad company liable for the act of a brakeman
against trespassers, which appear to us to be well consid-
ered, and but for the fact that their doctrine has not been
adopted in this state, and has not been followed in the
great majority of cases in other states, we would be dis-
posed to accept them as the law in this case.   We refer to
Hoffman v. N. Y. Cent. & Hud. Riv. R. R. Co., 87 N. Y. 25;
Smith v. L. & N. R. R. Co., 95 Kentucky, 11; Brevig v. C.,
St. P., M. & O. Ry. Co., 64 Minn. 168.   In those cases the
rule announced substantially is that the company's liability

depends upon the purpose and intent of the brakeman in committing the act. If the end sought to be accomplished by the brakeman was the intentional or malicious infliction of an injury upon the plaintiff, there could be no liability; but if the object and purpose was to eject the intruder without any evil design and merely to protect the interests of his employers, the company would be liable however cruel and reckless the means employed were. In the Brackman case, *supra*, and Farber v. Mo. Pac. Ry. Co., 116 Mo. 81, will be found the citation and a discussion of a very large number of cases on the subject, and we will not here cite or refer to them. Cases are to be found in this state where railroad companies have been held liable for the acts of engineers in violently expelling from engines persons having no right to be upon them, but the liability was based upon the fact that the engine was under control of the engineer and it was his duty to keep unauthorized persons off of it.

The rules of defendant introduced in evidence, among other things, contained this clause: "Train men must not, under any circumstances, eject a tramp or tramps, or other trespassers upon the train while it is in motion, nor without first conferring with the conductor, who may delegate special authority to train men." The conductor and brakeman both testified that no special authority was given to the brakeman to remove the plaintiff or compel him to leave the train.

We are of opinion that under the weight of authority, the verdict is not sustained by the evidence in this case. To sustain the verdict, we think it was incumbent upon the plaintiff to show that appellant's brakeman was acting within the scope of his employment or in the line of his duty. This might be done, if it were true, notwithstanding the printed rules of the company, and the fact that authority had not been expressly delegated by the conductor, showing that defendant's brakemen, or that the brakeman in question, had been in the habit of and accustomed to exercising the authority of ejecting trespassers from

appellant's trains, by the implied authority of his superiors. We have examined all the authorities in appellee's brief, and without attempting to review them, which, so far as we can see, would serve no good purpose, deem it sufficient to say that in our opinion they are not in conflict with the views we have herein expressed.

We are of opinion the cross-errors of appellee are not well assigned. It is claimed the court erred in admitting the rules of appellant in evidence, because it is said it did not appear from the evidence that they were in force at the time of the accident. It appears from the abstract that the conductor of the train that injured appellee testified they were in force January 1, 1902, which was the date of the injury. At the trial the court refused to allow appellee to testify in chief to some statement claimed to have been made to him by the brakeman at the depot after appellee had sufficiently recovered to return there to sell newspapers. The alleged statement was that the brakeman told appellee he had made him lose one foot, and if he did not keep away he would make him lose another. We do not think this was competent in chief. The brakeman when placed on the stand by appellant denied ordering appellee off the train, and denied all knowledge of his being on it, and of his injury till several days afterward. On cross-examination he was asked if he did not make the above mentioned statement to appellee, time and place being fixed, and replied that he did not. After he had answered, an objection was made and sustained, but the answer was not excluded. It would have been competent then for appellee to have testified to the alleged statement, but he did not offer to do so. We see no error in the court's rulings in the respect complained of by the cross-errors.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*