# Eliza A. Todd, Administratrix of the Estate of Jonathan N. Todd, Deceased, Appellee, v. Louisville & Nashville Railroad Company, Appellant.

1. Trial, § 155*—*what is province of jury as to evidence.* Where the evidence is conflicting it is for the jury to say what facts are proved.

2. Appeal and error, § 1411*—*when verdict not disturbed on appeal.* The finding of a jury as to what facts are proved by conflicting evidence will not be disturbed unless there was error in rulings on evidence or in instructions.

3. Carriers, § 307*—*how relation of carrier and passenger may arise.* The relation of passenger and carrier is contractual, and requires the assent of the carrier, express or implied, before it can arise.

4. Carriers, § 306*—*when assent to receive person as passenger not implied.* No assent of a carrier to receive a person as a passenger can be implied unless the passenger presents himself in a proper manner and condition, and at a proper time and place.

5. Carriers, § 251*—*when duty arises to accept and transport persons desiring to become passengers.* A railroad company owes to persons desiring to be transported the duty of accepting and transporting them, provided they present themselves at a proper time and place, and in a proper manner and condition, and tender or are willing to pay the necessary fare.

6. Carriers, § 310*—*when person may become a passenger.* A person may be a passenger on a railroad train without procuring a ticket.

7. Carriers, § 310*—*when person without ticket becomes passenger.* A person who boards a train and reaches a place of safety thereon is a passenger although the agent of the carrier refuses to sell such passenger a ticket, and, although defendant's porter attempts to prevent such passenger from entering the train, provided the passenger is able and willing to pay fare, and provided he is in a proper condition to be received as such.

8. Carriers, § 480*—*when question whether passenger in proper condition to be received for jury.* Whether a passenger is in a proper condition to be received as such is a question of fact for the jury on the evidence.

9. Carriers, § 476*—*when evidence sufficient to sustain finding that passenger not intoxicated.* In an action to recover for the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

death of plaintiff's intestate, where there was evidence that deceased attempted to board a moving train and had reached a place of safety thereon but was pushed off the steps of a car by defendant's porter, causing deceased to fall under the wheels and be killed, evidence of plaintiff *held* sufficient, if believed, to sustain plaintiff's claim that at such time deceased was not intoxicated and was ready, able and willing to pay his fare, although there was also evidence that shortly prior to attempting to board the train deceased had been drinking.

10. CARRIERS, § 278*—*what is duty of carrier to protect passenger from injury.* A person who boards a train and is ready, able and willing to pay his fare is a passenger, if not intoxicated, although shortly prior to boarding the train such passenger may have been drinking, and as such is entitled to the use of reasonable care and diligence on the part of the carrier and its servants to protect him from injury.

11. CARRIERS, § 535*—*when trespasser may not be forcibly ejected.* A railroad company has no right while a train is in motion to forcibly eject a trespasser who has reached a place of safety on the train, and will be liable for any injury caused by such ejection before the train has been stopped so that ejection will not endanger such trespasser's life.

12. RAILROADS, § 517*—*what duty owed to trespasser.* A railroad company owes no duty to a trespasser other than that owed to other strangers.

13. CARRIERS, § 535*—*what is right of trespasser as to freedom from injury.* A trespasser on a train does not, by being such, forfeit the right inhering in every person as against every other person to be free from wilful and intentional injury by such other person.

14. CARRIERS, § 340*—*when liable for acts of servants.* A railroad company is liable for the acts of a servant within the scope of the duty and authority of such servant.

15. CARRIERS, § 340*—*when porter acts within scope of his authority.* In an action to recover for the death of plaintiff's intestate where there was evidence that deceased attempted to board a moving train and had reached a place of safety thereon but was pushed off the steps of a car by defendant's porter, causing deceased to fall under the wheels and be killed, *held* that the act of the porter was within the scope of his authority.

16. CARRIERS, § 480*—*when question whether passenger attempting to board train guilty of contributory negligence for jury.* In an action to recover for the death of plaintiff's intestate, where there was evidence that deceased attempted to board a moving-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Todd v. Louisville & Nashville R. Co., 197 Ill. App. 141.

train and had reached a place of safety thereon, but was pushed off by defendant's porter, causing deceased to fall under the wheels and be killed, but where the evidence was conflicting, the question whether deceased was guilty of negligence contributing to his death *held* a question of fact for the jury.

17. CARRIERS, § 526*—*when evidence sufficient to sustain finding that porter forcibly pushed person from car.* In an action to recover for the death of plaintiff's intestate, where there was evidence that deceased attempted to board a moving train and reached a place of safety thereon, but was pushed from the steps of a car by defendant's porter, causing deceased to fall under the wheels and be killed, but where the evidence was conflicting, *held* that a finding of the jury that such porter forcibly pushed deceased from the car should not be disturbed, it appearing that the question was fairly presented to the jury.

18. INSTRUCTIONS, § 151*—*when requested instructions properly refused.* Requested instructions containing correct principles of law applicable to a case are properly refused where they are covered by others already given.

19. INSTRUCTIONS, § 20*—*when properly refused.* Instructions calling the attention of the jury to their examination prior to being accepted and sworn are properly refused.

20. APPEAL AND ERROR, § 1490*—*when exclusion of evidence not reversible error.* In an action to recover for the death of plaintiff's intestate, where there was evidence that deceased attempted to board a moving train and reached a place of safety thereon, but was pushed from the steps of a car by defendant's porter, causing deceased to fall under the wheels and be killed, the refusal of the trial court to permit the examination by defendant of a witness called by it as to an alleged statement made by the witness, such examination being sought for the purpose of refreshing the recollection or of awakening the conscience of the witness, *held* not reversible error although the court might properly have allowed the examination, it not appearing that the ruling affected the case in any material way.

Appeal from the Circuit Court of Hamilton county; the Hon. JACOB R. CREIGHTON, Judge, presiding. Heard in this court at the March term, 1915. Affirmed. Opinion filed December 1, 1915.

JAMES M. HAMILL and CHARLES P. HAMILL, for appellant.

H. ANDERSON and T. H. CREIGHTON, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE BOGGS delivered the opinion of the court.

This was an action on the case brought by appellee, against the Louisville & Nashville Railroad Company, to recover damages for the death of her husband. The declaration as originally filed consisted of five counts. The trial court, however, instructed the jury to find for the defendant on the first two counts.

The third count avers that Todd was waiting to become a passenger, and was ready, willing and able to pay his fare after he had entered the train; that while he was endeavoring to do so, the defendant negligently started its train and by its servants violently, carelessly, negligently and improperly pushed Todd off the train, while in motion, causing him to fall under the wheels.

The fourth count is practically the same as the third. The fifth count alleges that while Todd was endeavoring to enter the train, the defendant's servants seized him with great force and violently pushed, pulled and struck him to prevent him from entering the train, and negligently and improperly caused him to fall under the wheels of the train.

The defendant filed the general issue, a trial was had and the jury returned a verdict for $3,000. A motion for a new trial was overruled, and judgment rendered, from which judgment this appeal is taken.

The facts as they appear from the evidence are that Todd, a man of about thirty-five years of age, living at Bell Prairie, Illinois, where he operated a telephone exchange and was engaged in the insurance business, on the day he was killed went to Carmi to transact some business with the agents of the Insurance Company for which he was working. Todd finished his business at Carmi with the insurance agents between 1:30 and 2 o'clock in the afternoon. The train from McLeansboro was due to leave about 3:20. It is claimed by appellant that Todd left the insurance office and went more or less directly to the L. & N. station, where

he tried to buy a ticket about 2 o'clock p. m., but the agent refused to sell him one because, as the agent testified, he appeared to be under the influence of liquor. It is also claimed by appellant that Todd went to a saloon not far from the railroad station where he was seen to take two or three drinks. Todd returned to the station perhaps twenty minutes before train time, where he was seen by several persons to drop his overcoat, breaking a bottle of whisky he had in the pocket. After this he returned to the saloon and purchased one or two bottles of whisky and then came back to the station, where he was seen talking with an insurance man named Garrison at the time the train pulled in.

The evidence on the part of appellant is also to the effect that Todd at this time was more or less under the influence of liquor and was pronounced by several witnesses who testified on the trial to be intoxicated. On the part of appellee the evidence is to the effect that while Todd may have taken two or three drinks he was not intoxicated, but was apparently sober at the time he was seen at the railroad station just prior to the accident.

The undisputed evidence is also to the effect that Todd was having a more or less heated conversation with a man by the name of Garrison at the time the train pulled in. The train waited at the station some three or four minutes and the evidence of appellant tends to show that the bell rang and the train had begun to move before Todd attempted to get on, while the evidence of appellee's witnesses is to the effect that Todd attempted to board the train before it started. The evidence of all the witnesses who saw the accident is that Todd attempted to get on the train at the front end of the smoker. As to what happened after Todd attempted to board the train there is a conflict of evidence, the witnesses for appellant testi-

fying to the effect that Todd was intoxicated and that
the colored porter refused to let him get on the train
on account of such intoxication.   The evidence of ap-
pellant is further to the effect that the colored porter
was between Todd and the train when the rear end of
the smoker came along, and that he prevented Todd
from getting on the train at this time, and that when
the rear end of the ladies' car came along the porter
grabbed the hand rails and got on the car.   The train
at this time was running some six to ten miles per
hour.   The evidence of appellant is further to the ef-
fect that Todd again attempted to get on the train, and
had apparently caught the rear hand rail of the vesti-
bule coach next back of the ladies' coach, the door of
which was shut, making it impossible for him to get
on there.   Todd had his overcoat over his left arm, the
train was moving rapidly, whereupon he was thrown
upon the platform and rolled under the train.   The
evidence of appellant further tended to show that the
porter did not touch Todd when he made his last at-
tempt to get on the train.   On the other hand, the wit-
nesses on the part of appellee testified that the train
had not started when Todd attempted to board the
same at the front end of the smoker; that after he at-
tempted to get on, the porter prevented him from doing
so and raised his hand and pushed him back.   Todd
then tried to get on the rear end of the smoker where
the porter again pushed him off.   Todd then stepped
back towards the rear end of the ladies' coach and
took hold of the handle bar and stepped on the lower
step.   At this time the porter took hold of him and
shoved or pushed him away and threw him from the
car on the edge of the platform, where he fell under the
coach, was run over and killed.

As in most cases, the testimony was more or less
conflicting, but the above statement substantially cov-
ers the same.   There being a conflict in the evidence
it was for the jury to say what facts were proved, and

its finding cannot be disturbed, if the court did not err in its ruling on the evidence and in the giving of its instructions.

It is contended by appellant, first, that appellee's intestate was not a passenger on appellant's train; second, that the porter was acting beyond the scope of his authority in pulling him from the steps of the car; and third, that the plaintiff's intestate was killed or mangled in endeavoring to board the car while the train was moving.

Appellant devotes a large part of its brief and argument in support of its first proposition that Todd was not a passenger at the time the accident occurred, the argument being that the relation of passenger and carrier is a contractual relation requiring an express or implied assent on the part of the carrier before it can arise; and that there can be no implied assent on the part of the carrier to receive one who does not present himself in a proper condition and manner and at a proper place and time.

In support of this proposition counsel for appellant cites numerous authorities, all of which we think substantially support his proposition, but we do not think it follows, as a proposition of law from the authorities cited, that appellee's intestate was not a passenger of appellant at the time of the accident. A railroad company owes a duty to persons desiring to be carried, to accept and carry such persons, providing they present themselves at a proper time and place, and in a proper manner, and condition, and tender or be willing to pay the necessary fare. This proposition is so elementary and fundamental that it needs no citation of authorities for its support.

We do not understand appellant to contend that a person must necessarily procure a ticket in order to become a passenger and we do not understand that to be the law. *Chicago & E. I. R. Co. v. Jennings,* 190 Ill. 486; *Merrill v. Michigan Cent. R. Co.,* 158 Ill. App.

40; Elliott on Railroads, sec. 1879; *Pennsylvania Co. v. McCaffrey,* 173 Ill. 169; *Illinois Cent. R. Co. v. O'Keefe,* 168 Ill. 115.

Appellant contends that Todd applied at the ticket office for a ticket and, that, because of his intoxication, the agent refused to sell him a ticket, that it necessarily followed that at the time he had not become a passenger, and that when he applied for admission to the train and the porter refused to permit or allow him to board the train, that he was still not a passenger. For the sake of the argument it can be admitted that appellant's contention on these points is well taken, still we are of the opinion that notwithstanding the fact that the agent refused to sell Todd a ticket, and notwithstanding that the porter attempted to prevent Todd from boarding the train, if Todd did board the train, and did reach a place of safety, he would then become a passenger, providing he was able and willing to pay his fare, and providing also he was in a proper condition to be received as such. As to whether he was in proper condition and as to whether he was ready, able and willing to pay his fare were questions of fact for the jury under the evidence. The evidence on the part of appellee if taken by the jury was abundantly sufficient to sustain appellee's claim that Todd at the time he boarded the train was not intoxicated and was ready, able and willing to pay his fare, and if this be true, he was then a passenger, and it was the duty of the defendant and its servants to use all reasonable care and diligence to protect him as such. We go further and say that we believe the law in this State to be that, conceding Todd to have been a trespasser as claimed by the appellant, still if he had reached a place of safety on the train then even though he were a trespasser, the defendant company would have had no right to forcibly eject him while the train was in motion. Before the defendant could have removed Todd from its train after it had started, it must

stop its train so as not to endanger his life, and to do otherwise would render the company liable.

Second, it is next contended that even though the colored porter did push, pull or remove Todd from the train, under the circumstances claimed by appellee whereby he lost his life, that the company would not be liable because the act would be beyond the scope of the duties and authority of the said porter.

A number of authorities are cited by appellant's counsel which it insisted go in support of their contention that the act of the porter was without the scope of his authority. We have examined these cases and we find that in not one of them is the question of the liability of a railroad company for the act of its porter in ejecting a passenger from its train involved.

In the case of the *Illinois Cent. R. Co. v. King,* reported in 179 Ill. 93, being one of the cases relied on by appellant, we find that the question involved in that case was whether the railroad company was liable for the act of its brakeman in ejecting a trespasser from one of its freight trains. At page 93 the court in its opinion says: ''Plaintiff was a trespasser, and defendant owed him no duty other than such as it owed to any stranger. But although he was a trespasser he did not forfeit the right which inheres in every person as against every other person in all conditions, that defendant should not wilfully and intentionally inflict an injury upon him.   *   *   *.

''There was evidence tending to prove that the act of the brakeman was wilful. He pulled the plaintiff from under the cars when the train was running at a speed of six or eight miles an hour, and manifested his feeling and willingness to inflict a needless injury upon plaintiff by cursing him and throwing a stone at him.

''The liability of defendant rests upon the further question whether the act of the brakeman was in the

course of his employment and authority as a servant of the defendant. If he was acting within the scope of his duty and employment the defendant would be liable for his act," citing *Chicago City Ry. Co. v. McMahon,* 103 Ill. 485. "There was no want of evidence to show that the brakeman did the act within the scope of his duty. He testified as follows: 'Our instructions are to stop and put them off if we find some one beating their way.' * * * This evidence shows conclusively that it was within the scope of his directions and duties to put trespassers off the train." The court in this case held the railway company liable for the act of the brakeman.

In the case at bar the porter, we think, in view of the evidence disclosed by the record, was acting within the scope of his authority.

Again it was contended by appellant that plaintiff's intestate was guilty of negligence as a matter of law in attempting to board a moving train. We think, however, that in view of the conflicting evidence as to what actually occurred at the time Todd attempted to board the train, and as to whether or not he did board the train and reach a place of safety, renders the question of whether he was guilty of negligence contributing to his injury, a question of fact for the jury. The question was fairly presented to the jury as to whether or not the porter did forcibly push Todd from the cars, and their finding in that matter we think should not be disturbed. Appellant also assigned error on the giving of instructions on the part of appellee and on the refusal of instruction offered by appellant.

Appellee only offered two instructions and those were such as have been frequently approved by this and the Supreme Court. Twenty-four instructions were given at the request of appellant, and an examination of these instructions demonstrates that the trial court fairly instructed the jury on every phase of appellant's case.

We find that as to the instructions that were refused, all of them so far as they embodied correct principles of law applicable to the case at bar were covered by other instructions given by the court on behalf of appellant. Instruction thirty-three asked by the appellant and refused by the court calling attention of the jury to their examination prior to their being accepted and sworn, we think, was improper and the trial court was right in refusing the same.

Appellant also contended that the court erred in refusing to permit the witness Myrle Sefried, called by it, to be questioned in regard to an alleged statement he was claimed to have made for the purpose of refreshing his recollection or awakening his conscience.

We are inclined to the opinion that the court should have allowed these questions to have been asked, but we do not think that their refusal would constitute reversible error. In fact we do not see how this ruling could in any way materially affect the case.

Accordingly the judgment of the Circuit Court is affirmed.

*Affirmed.*