THE CHICAGO TERMINAL TRANSFER RAILROAD COMPANY

*v.*

PASQUALE SCHIAVONE, Admr.

*Opinion filed June 23, 1905.*

1. APPEALS AND ERRORS—*asking general instructions does not waive error in refusing peremptory one.* A defendant in an action for negligence, whose instruction to find in its favor, asked at the close of the evidence, is refused, is not estopped to assert, on appeal, that there was no proof of negligence on its part nor of due care on the part of the plaintiff, by afterwards asking and obtaining instructions submitting those questions to the jury.

2. RAILROADS—*duty of railroad company in constructing cattle-guard fences.* In constructing cattle-guard fences railroad companies are not required to build them so far from the tracks that a person riding on the edge of a flat-car, with his feet hanging down, could under all circumstances pass the fence in safety.

3. SAME—*when person riding on car must use a high degree of care.* One choosing to ride on the edge of a flat-car, with his feet hanging down, is bound to know that the position is dangerous, and must exercise a high degree of care to avoid injury by reason of his feet coming in contact with stationary objects upon the right of way near the track.

4. SAME—*conductor is not presumed to have authority to invite persons to ride.* An undertaking by a railroad company to transport a person is not shown by proof that when he and other track-men were returning on foot from where they had been unloading a car they were overtaken by an engine and flat-car and got upon the car at the invitation of the conductor, where there is no proof that the conductor was authorized to carry the men or that he had general authority to carry employees to and from their work.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

This is an action on the case brought by the appellee, as administrator of the estate of Francisco Surianelli, deceased, in the circuit court of Cook county, to recover damages resulting from the death of his intestate, caused, as he charges, by the wrongful acts of appellant. A recovery was had un-

der the fourth count of the declaration, which alleges the existence of the relation of master and servant between the deceased and appellant; that it was the duty of the master to furnish to the servant safe transportation between two certain points on its lines; that it had negligently constructed a cattle-guard fence so that the same was in dangerous proximity to its tracks, and that by reason thereof decedent, while lawfully upon a passing train, was suddenly brought in contact with the cattle-guard fence and as a result thereof lost his life. The plea was the general issue. A trial resulted in a judgment for the sum of $2000 in favor of appellee, which has been affirmed by the Appellate Court for the First District, and the record is brought to this court by appeal.

The accident which caused the death of Surianelli occurred in one of the country districts of Cook county, outside the limits of any incorporated city or village, where the lines of appellant cross a public highway known as Burr Oak avenue. This avenue runs east and west. Appellant has double tracks there which run north-west and south-east as they cross the avenue. On the north side of the avenue, for the purpose of keeping live stock in the highway from coming upon the right of way, appellant had provided cattle-guards and cattle-guard fences. Between the two tracks there was a low, short panel of fence. This panel, at the base, was approximately three feet long. Its height was a little more than three feet, and its ends approached each other as they rose from the ground, so that the upper edge of the top board was but a few inches in length, making the panel the shape of an inverted letter V with the tip of the letter cut off and with the base somewhat narrowed.

The deceased was in the employ of appellant as one of a number of men working on its tracks and road-bed, engaged in labor of the kind ordinarily done by section men. On the morning of September 30, 1901, he was at work in the line of his employment at a point north of Burr Oak avenue. The foreman selected fifteen men, including Surianelli, from

among those there employed and ordered them to go down the tracks to a side-track about a mile south-east of the Burr Oak avenue crossing, and there unload some cars that were loaded with dirt, and directed them, when they had completed the work, to return. The men did the work as directed, and started to walk back along appellant's tracks. When they had walked a short distance, and while still about a half mile from the crossing in question, they were overtaken by a locomotive pushing a flat-car before it. This car and engine were in charge of a conductor in the employ of appellant, who was riding on the car, and when the men were overtaken, the car stopped and the conductor told the fifteen men to get on the car. They did so. There was nothing on the car which could be used for seats except a piece of timber about six inches square running the full length and in the middle of the car. The engine and car had been going north-west on the right-hand track of the double tracks above referred to. The men took such positions on the car as they saw fit, without directions from anyone. Eight of them sat down on the edge of the car on the right-hand side and five of them, including decedent, sat down on the edge of the car on the left-hand side, all facing outward, with their legs, from the knees, hanging down from the top of the car. The other two men sat in the middle of the car. The engine and car then proceeded north-west on the right-hand track and approached Burr Oak avenue, going at a rate of about twenty miles an hour. Just before reaching the avenue, the decedent discovered that he had left his coat where he had been working. He stated this fact to the man beside him and then turned sidewise, apparently to speak to one of the trainmen about it. As he turned, he threw his right foot out from the edge of the car, and as he did so the heel of that foot struck upon the top of the panel of fence above mentioned, and he was thereby thrown from the car. He fell under the wheels and was killed. A few days after the accident the same flat-car was again pushed down to this

crossing and certain measurements were then made with a man sitting on the car with his legs hanging down, and it was found that if the deceased had permitted his feet to hang straight down from the top of the car they would have missed the panel of fence by six or eight inches.

JESSE B. BARTON, for appellant.

HENRY R. RATHBONE, (M. PAUL NOYES, of counsel,) for appellee.

Per CURIAM: At the close of all the evidence appellant moved for a peremptory instruction directing the jury to return a verdict of not guilty, and the action of the court in overruling that motion is assigned as error. Appellee insists that appellant is estopped from asserting that there was no proof of negligence on its part or of the exercise of due care by decedent, for the reason that, after this motion was overruled, appellant requested, and the court gave, instructions which submitted to the jury these matters as questions of fact. We have recently decided this proposition adversely to appellee's contention, and it is unnecessary to again discuss it. *Chicago Union Traction Co.* v. *O'Donnell,* 211 Ill. 349; *Illinois Central Railroad Co.* v. *Swift,* 213 id. 307.

There is no conflict in the evidence, but the facts as testified to by the witnesses for the appellee are conceded to be true. It appears the deceased lost his life at a public highway crossing by being thrown from a flat-car upon which he was riding, by reason of one of his feet coming in contact with the cattle-guard fence located between the main tracks at that point. The fence was constructed at the proper place and in the usual manner, and had the deceased had his feet on top of the car he would not have been injured. He saw fit, however, to sit upon the edge of the car with his legs hanging over the side, and while in that position his foot caught upon the top of the fence as the car passed the cattle-guard and he was thrown from the car. There was ample

room for his feet to have passed the fence with his legs hanging over the side of the car had he remained in the posture which he assumed when getting upon the edge of the car, but he shifted his position just as the car reached the fence and threw one foot out from the edge of the car and it came in contact with the fence. The injury took place in the day time and the fence was in plain view from the top of the car, and had the deceased been in the exercise of due care for his own safety it seems clear he would have observed the proximity of the fence to the moving car. It also seems clear that negligence, under the circumstances disclosed by the evidence, ought not to be imputed to the appellant. The statute required it to construct a cattle-guard at that crossing, which included the cattle-guard fences, and if it constructed the cattle-guard fences in such manner that persons riding in or upon its cars could safely pass the same it had performed its duty to the public and to the deceased. When the deceased took a position upon the edge of the car with his legs hanging down the side of the car he assumed a position which he was bound to know was a dangerous one, and by reason of that fact the law imposed upon him the duty to exercise a high degree of care to avoid injury by his feet and legs coming in contact with stationary objects along the right of way near the track over which the car upon which he was riding was passing. In the construction of cattle-guards and cattle-guard fences at public highway crossings, to be effective for the purposes for which they are constructed, such fences must approach near to the tracks, and in the construction of such cattle-guards railroad companies ought not to be required to so construct the cattle-guard fences as to render them unavailing, in order that a person riding upon the edge of a flat-car with his legs hanging down the side of the car could, under all circumstances, pass such cattle-guard fences with safety.

It is urged, however, that the appellant having undertaken to carry the deceased upon said flat-car, it was its duty

to use reasonable care to transport him in safety. If the appellant undertook to carry the deceased upon the car such would be the law. It appears, however, from the evidence, that the deceased, in company with the other men, was returning on foot upon the right of way from the unloading of cars which they had been directed by their foreman to unload and were overtaken by the flat-car and engine, and by the invitation of the conductor in charge thereof they got upon the flat-car. There is no evidence in the record that the conductor was acting within the scope of his employment or was in the performance of his duty in inviting the men to go upon the car, and if he was not the representative of the appellant in stopping said car and inviting the men to ride thereon then the appellant owed no duty to the deceased, and it cannot be held liable for an injury sustained by him while upon the car. It appears the car was not the one upon which the deceased and the other men were conveyed from the city to their work, and from aught that appears in the evidence the stopping of said car and inviting the men to ride was purely voluntary on the part of the conductor and beyond the scope of his employment. The deceased did not sustain to the appellant the relation of a passenger being carried for hire, and if the appellant owed the deceased any duty while he was upon said car, it grew out of his right to be carried by the appellant to and from his work while in its employ. That right could only exist by virtue of a contract, and the conductor of the appellant could not make such contract unless he was expressly authorized so to do, or was acting within the scope of a general authority authorizing him to carry the employees of the appellant to and from their work at the time he stopped the car and invited the men to ride. As there is no proof in the record of express authority to carry these men or of general authority to carry the employees of the appellant to and from their work, no presumption obtains that the conductor in charge of said engine and flat-car had such authority.

From a careful consideration of this record we are of the opinion the appellee failed to make a case, and that the trial court erred in refusing to direct a verdict in favor of the appellant at the close of all the evidence.

The judgments of the Appellate and circuit courts are therefore reversed and the cause is remanded to the circuit court for a new trial.     *Reversed and remanded.*