## Chicago, Rock Island & Pacific Railway Company v. Michael F. Moran, a minor.

### Gen. No. 4,642.

1. PASSENGER AND CARRIER—*when relation of, does not arise.* One who takes his position upon the steps of the platform of a car, having no intention of becoming a passenger and not presenting himself to the carrier as such, does not acquire the rights of a passenger.

2. RAILWAY JUNCTION—*when railroad company under no obligation to stop its trains at.* A railroad company is under no obligation to stop its trains at a railroad junction merely for the benefit of a trespasser.

3. STATUTE—*who cannot complain of railroad company's violation of.* A trespasser cannot complain of the failure of a railroad company to observe a statute regulating the movement of railroad trains.

4. EJECTION FROM TRAIN—*who without implied authority to make.* A brakeman has no implied authority to eject a person from a railroad train.

5. EJECTION FROM TRAIN—*what does not establish authority to make.* A previous course of conduct, not shown to have been known to the company, or its proper representative, does not establish authority to eject.

6. MOVING TRAIN—*what does not justify trespasser in alighting from.* An order from an employe of a railroad company, authorized or unauthorized, does not justify a trespasser in jumping from a moving train at a rate of speed which he knows to be dangerous.

Action in case for personal injuries. Appeal from the Circuit Court of Will county; the Hon. ALBERT O. MARSHALL, Judge, presiding. Heard in this court at the April term, 1906. Reversed, with finding of fact. Opinion filed October 16, 1906.

SNAPP, HEISE & DIBELL, for appellant; R. A. JACKSON and B. S. CABLE, of counsel.

J. W. Donney, for appellee.

Mr. Justice Thompson delivered the opinion of the court.

This is an action on the case, brought by appellee, to recover damages for personal injuries alleged to have been sustained upon being forcibly ejected from a moving passenger train by an employe of appellant. It was first tried in 1903 and resulted in a verdict and judgment for appellee for $4,000. On appeal that judgment was reversed by this court and the case remanded. The opinion of this court will be found in 117 Ill. App. 42, where a statement of the facts may be found.

There has been no change in the pleadings, but the evidence of appellee is some different at this trial from his evidence upon the former trial. The verdict at the last trial was for $8,000, and the Circuit Court in passing upon a motion for a new trial ordered, "that if plaintiff will remit $2,500 from the verdict, a new trial of this case will be denied." Thereupon plaintiff remitted $2,500 and judgment was entered for $5,500, and defendant appeals.

The declaration contains four counts. The first count, among other things, alleges, "while plaintiff with all due care was lawfully riding on said car, the defendant by one of its servants, wilfully, negligently and wrongfully laid hands upon plaintiff, and negligently and wilfully with great violence threw him from said car and under the wheels of said car, and said car and train ran over the body of said plaintiff, whereby he was permanently injured," etc. The second alleges that on January 1, 1902, and for a long time prior, newsboys were accustomed to go upon the cars of defendant to sell newspapers "with the knowledge, consent and approbation, and without objection of defendant, and that plaintiff, a newsboy, boarded one of defendant's passenger cars for the purpose of

selling papers to passengers and while plaintiff was lawfully in said car, defendant, by its servants, without notice to plaintiff and without warning to plaintiff to get off said car, violently, negligently and unlawfully cast and threw plaintiff to the ground with great force,'' etc. The third count contains the same allegations with reference to newsboys as the second and then avers that while plaintiff was lawfully on said car the defendant "through its servants wrongfully, wilfully and negligently frightened the plaintiff and caused him to jump from said car to the ground, and the wheels of said car," etc. The fourth count alleges that the tracks of the Chicago & Alton R. R. Co. and of the Atchison, Topeka & Santa Fe Ry. Co. crossed the tracks of defendant at grade in said city of Joliet more than eight hundred feet northeasterly from the depot of defendant, and that it was the duty of defendant to stop all its trains within eight hundred feet of said grade crossing, and that plaintiff at the time aforesaid and long prior thereto was a newsboy accustomed to go upon the cars of defendant with the knowledge and consent of defendant, and on said date boarded the car of defendant at Joliet for the purpose of selling newspapers to passengers, and while lawfully on said car defendant failed to stop said train within eight hundred feet of said crossing whereby it became impossible without great danger to alight from the car on which he was riding, and the defendant, through its servants, wrongfully and wilfully caused the plaintiff to jump," etc.

The difference in the testimony at this trial from the other trial is, that plaintiff, Moran, on the former trial testified that he did not know that he was not allowed on the train; that he had been in the habit of riding along with the train; that as the train started, the porter, Caldwell, closed the vestibule door and another passenger came out and opened it again; while on this trial he testified that Caldwell, the porter, had

put him off the train nearly every morning he came through, and he came through Joliet every other morning; that the vestibule door was open, after the first passenger opened it, until Caldwell closed it at the Alton crossing, three and one-half blocks from the depot, and that the porter did not close it when the train started. He was also permitted to testify, over the objection of defendant, that he had one dollar in his pocket, and that the train did not stop at the Chicago & Alton crossing. The plaintiff was also permitted to prove against the objection of defendant, for the purpose of showing the authority of porters and brakemen on defendant's trains, that other porters and brakemen at other times had put him and other newsboys off the train of defendant while in motion. Caldwell, the porter, testified that he did not see Moran the morning he was injured, and that he did not put him off or order him off the train; that he carried a copy of the printed rules of defendant with him, and was familiar with them. These rules were introduced in evidence, and under the heading "conductors" show that the conductor has general charge of the train and all men employed on the train are under his orders; that conductors and trainmen must attend to the comfort and safety of passengers; "Trainmen must not under any circumstances eject a tramp or tramps or other trespassers upon the train while it is in motion, without first conferring with the 'conductor who may delegate special authority to trainmen;" and under the head of "Flagmen and Brakemen:" "While on the train, flagmen and brakemen are under the direction of the conductor." The proof further shows that George Urch was the conductor in charge of the train, and that he did not know Moran was on the train that morning, and gave no orders or instructions to any employe to remove Moran, and he never saw or knew that Caldwell put anyone off the train.

The evidence of plaintiff, Moran, shows clearly that he knew he was not allowed on the train to sell papers, as he says he would watch to see where the brakeman was, and when the brakeman had gone to another part of the train he would get on the train to sell papers, and if the brakeman was there he would not. On the morning he was injured he climbed upon the step of a closed vestibule car, and called his papers, hoping passengers would come to the door and buy. He says he was not going anywhere. He had no intention of becoming a passenger, nor of presenting himself as a passenger. He remained on the steps of the car, when, the vestibule door having been opened by a passenger, he could have gone inside and taken a place provided for the reception, accommodation and carriage of passengers. He neither expressly nor impliedly acquired any of the rights of a passenger, either for hire, or by invitation or sufferance of appellant. Illinois Central R. R. Co. v. O'Keefe, 154 Ill. 508. He was clearly and knowingly a trespasser on the train, and it was error to permit proof to be made that he had one dollar in his pocket, with which he could have paid a fare, he never having decided to become a passenger, or in any way given any employe of defendant any express or implied notice that he wished to become a passenger, and nowhere in the declaration is it even alleged that he was or that he intended to become a passenger. This testimony tended to give the jury to understand that he had acquired the rights of a passenger.

There was error in admitting evidence that the train did not stop at the Chicago & Alton crossing. The appellant was under no obligation to stop there for the benefit of a trespasser on the train. Statutes regulating the movements of trains are for the benefit of passengers and those who are not trespassers, and in not stopping at the railway junction no legal rights of appellee were violated. Smith v. C. & E. I. R. R. Co., 99 Ill. App. 296; L., N. A. & C. R. R. Co. v. Johnson, 44 Ill. App. 58.

The third count alleges that while plaintiff was lawfully on said car, the defendant, through its servants, wrongfully and wilfully frightened the plaintiff, and caused him to jump whereby he was injured. If it were the fact that the porter ordered plaintiff in an angry manner to get off the moving train, can the judgment stand? There is no averment in the declaration that the porter or brakeman had any authority to order trespassers off the train. The rules of the company show that the order complained of was not in the line of his employment. The porter would only have authority to eject trespassers when directed to do so by the conductor, and the evidence clearly shows the conductor did not know Moran was on the train, and that he did not give any instructions of any kind to Caldwell to put any persons off, and he never knew that he ordered any person off. The fact that the porters or brakemen had on former occasions, as the train was starting, compelled persons who were not passengers to get off the train, did not show that the defendant, through its conductor or any of its authorized officers, had authorized such action on the part of the porter. Wrongful conduct by a servant outside the line of his duty does not bind the master, unless the master has authorized it or knowingly permitted such conduct, and in order to show an implied authority it must appear that the master knew of such a course of conduct. The contrary is proven here, the evidence being that the conductor had no notice of such conduct on the part of the brakeman or porters. Brakemen have no authority to eject persons from trains, and the burden of proof was on the appellee to show that Moran, when injured while he was a trespasser, was injured because of some act of an employe within the scope of his authority. Chicago Ter. Transfer Co. v. Schiavone, 216 Ill. 275; C., R. I. & P. Ry. Co. v. Brackman, 78 Ill. App. 141; I. C. R. R. Co. v. King, 179 Ill. 91; Chicago R. R. Co.

v. McMahon, 103 Ill. 485; C. & W. I. R. R. Co. v. Ketchem, 99 Ill. App. 660; Marion v. C., R. I. & P. Ry., 59 Iowa, 428; Farber v. Mo. Pac. Ry. Co., 116 Mo. 81; Towanda Coal Co. v. Heeman, 86 Pa. St. 418; Randall v. G. T. Ry., 71 N. W. (Mich.) 450; L. S. & M. S. Ry. Co. v. Peterson, 144 Ind. 214; A. G. S. Ry. Co. v. Harris, 71 Miss. 74. "The law cannot assume at least as to a subordinate employe on a train who is not entrusted with the general management and control of it, that he has control over passengers or persons attempting to ride, or that he is entrusted by his employer with authority in respect to them, or to eject them, and it was necessary to make proof." I. C. Ry. Co. v. King, *supra,* at page 95. The law does not undertake to fix or declare the duties of brakemen and porters, and raises no presumption as to such duties. The right of prescribing the lines and limits of the duties of employes rests with the master. The duty of an employe in a given case is a matter to be established by proof, the same as any other fact concerning which the law raises no presumption. The burden was upon appellee to prove all the necessary facts, which would entitle him to recover.

The evidence showing that the conductor had not authorized the porter to put anyone off the train, either at the time of this accident, or at any other, and that the conductor had no notice or knowledge of any such right ever having been assumed by the porter, the evidence that Moran and other newsboys had been put off by porters or brakemen was improper, and insufficient to prove such act to have been within the scope of the porter's employment. Such evidence could only be rendered proper by showing in some way that such acts were by the direction of or within the knowledge of the conductor, and thus an express or implied authority would have been proved, as indicated in the former opinion in this case.

Moran says he knew it was dangerous to get off

when the train was going at the rate it was, where it crossed the Chicago & Alton tracks. The danger being evident and known to Moran, and the order to which Moran testifies being unaccompanied by force or overpowering intimidation, had the order been given by an employe with the requisite authority to give such, order, the appellant would not be liable for injuries resulting from appellee's compliance with the order. Bosworth v. Walker, 83 F. R. 58.

In what has been said we have not regarded the evidence of appellant, which shows that the porter did not see Moran the morning of the injury, nor the contradiction of Moran by his testimony given at the first trial.

The Circuit Court should have given the peremptory instruction to find for the defendant, because of a failure to prove the order given to get off the train, if any such was given, was by one with authority, either express or implied, to give such order.

The judgment of the Circuit Court will be reversed.

*Reversed.*

Finding of facts, to be incorporated in the judgment: We find that appellant was not guilty of the negligence charged in the declaration, and that appellee was injured because of his own negligence and want of ordinary care for his personal safety.