James Ferris Scott, Defendant in Error, v. Peabody Coal Company, Plaintiff in Error.

### Gen. No. 14,864.

1. MASTER AND SERVANT—*when former not liable to third party for acts of servant.* If a servant employed by a master in the driving of a coal wagon has been instructed not to permit boys to ride with him on such wagon and he violates such instructions and the boy riding upon such wagon is injured, the master is not liable.

2. NEGLIGENCE—*what not attractive nuisance.* Held, that a coal wagon in active use is not an attractive nuisance so as to render the owner thereof liable for an injury to a boy who is permitted to ride thereon contrary to specific instructions by the master.

Action in case for personal injuries. Error to the Municipal Court of Chicago; the Hon. CHARLES N. GOODNOW, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed. Opinion filed February 15, 1910.

**Statement by the Court.** This writ of error is prosecuted to reverse a judgment of the Municipal Court of Chicago for $600 entered on a verdict of a jury in favor of the plaintiff, James Ferris Scott, a minor, defendant in error here, against the defendant, Peabody Coal Company, plaintiff in error, in an action for personal injuries.

In the forenoon of July 23, 1907, the plaintiff, a boy about nine years old, was sent by his mother, Lucia Scott, to the coal yard of the defendant at 59th

street and Stewart avenue, Chicago, with the lunch of George Sparks, a coal shoveler employed by the defendant. Sparks boarded with Mrs. Scott. When the plaintiff arrived at the coal yard, Sparks asked him, "Do you want to ride home?" and plaintiff said, "Yes." Sparks then told the plaintiff to ask the driver of a wagon to let him ride, and the plaintiff answered that he did not want to ask him. Sparks then asked a driver, Anthony Hughes, to give the plaintiff a ride home. Hughes told the plaintiff to go to the corner of the street and wait until he came along and then he would let him get on the wagon. The plaintiff thereupon left the coal yard and went to the corner about a block away, and waited for the driver to come with the load of coal. When the driver came along, he asked plaintiff how far he wanted to go, and on being told, said to plaintiff, "Get on the back of the wagon." There was another man on the wagon named Vaughn who was not in the employ of the defendant company. Vaughn had been to the coal yard to seek employment. Failing to obtain employment, he intended to go with the driver to help him unload the coal. When the plaintiff went from the sidewalk to the wagon, which was running in the street car tracks, Vaughn walked over the load of coal to the rear end of the wagon for the purpose of assisting the plaintiff to get on the wagon. Getting down on his knees he reached down to the plaintiff to take his hand. Plaintiff took hold of a bar running across the rear end of the wagon and endeavored to get on the wagon, the team being still going at a walk.

The plaintiff testified as follows: "When I started to get on the wagon, the man held down his arm to me to pull me up. He grabbed hold of my hand and was pulling me over the wagon. Then after he had pulled me up a little higher I said, 'No sir, I can't get up. Leave me down.' Then he said, 'Oh no; you can get up,' and he wouldn't let go my hand. Then my foot got caught; I think it was in between the hub." On

cross-examination he said, "My foot was swinging under the wagon just before it got caught or hurt. I don't know what my foot got caught in."

Vaughn testified as follows: "I reached down to help him on, and I tried, but missed his hand."

After plaintiff's ankle was injured he in some way dropped to the ground in the rear of the wagon, was either carried or hopped over to the sidewalk. He was taken to a drug store and then to a hospital. He was seriously injured.

It appears without controversy that at the time Sparks asked the driver to permit plaintiff to ride on the wagon, no one connected with the defendant company was present, nor was any one connected with the defendant present at the time the plaintiff attempted to get on the wagon. The driver had been told by the witness Gorman, the superintendent of the office and yard, and also by the barn boss of the defendant, to let nobody ride on the wagon. The defendant was in the business of buying, selling and delivering coal; and Hughes, the driver, was employed to drive a coal wagon through the streets of the city of Chicago, and had no authority to accommodate passengers of any kind under any conditions.

H. L. HOWARD, for plaintiff in error.

McGOORTY & POLLOCK, for defendant in error.

MR. JUSTICE SMITH delivered the opinion of the court.

The fundamental question presented by the record is that of liability. The evidence shows without controversy that the action of the driver, Hughes, in inviting or permitting the plaintiff to ride on the wagon he was driving was entirely outside of, and beyond the scope of the business of the defendant, and the employment of the driver. The defendant had not permitted its drivers to allow boys to ride on its wagons.

On the contrary all drivers of coal wagons, and Hughes personally, had been forbidden to do that thing. So far as the record shows this was the first time any attempt had been made to violate this injunction to the drivers of defendant's wagons; and no notice of any custom or practice on the part of its drivers had been brought home to the defendant, if any such practice existed. Allowing the plaintiff to climb up on the rear end of the wagon while it was in motion was likewise entirely outside of the employment of the driver, and outside the scope of the business of the defendant, and contrary to orders. It is not claimed that the defendant had any notice or knowledge of the act of Hughes. The only inference from Hughes' direction to plaintiff to go to the corner and wait for him there, instead of permitting him to get on the wagon before it left the yard, is, that there was an attempt to conceal from defendant's knowledge the fact that plaintiff was to be permitted to ride on the wagon. If Hughes was negligent in allowing plaintiff to attempt to mount the wagon while it was in motion, it was not only not the act of defendant, but it was without the knowledge of the defendant, and a part of the concealment of the servant of his violation of express orders. There is, therefore, no circumstance or fact in the case which takes it out of the general rule, so often announced and applied in this kind of cases, that the master is not to be held to respond for the negligent acts of the servant done outside of the scope of the master's business and the servant's employment. Brewing & Malting Co. v. Huggins, 96 Ill. App. 144. "An act done by a servant while engaged in his master's work, but not done as a means or for the purpose of performing that work, is not to be deemed an act of the master." Bowler v. O'Connell et al., 38 N. E. Rep. 498; Driscoll v. Scanlon, 43 N. E. Rep. 100; Chicago T. T. R. Co. v. Schiavone, 216 Ill. 275; Chicago, M. & St. Paul Ry. Co. v. West, 125 Ill. 320; Chicago R. I. & P. Ry. Co. v. Moran,

129 Ill. App. 38; Chicago City Ry. Co. v. Cooper, 128 *id.* 528; Chicago R. I. & P. Ry. Co. v. Brackman, 78 *id.* 151; Flower v: Pennsylvania R. Co., 69 Pa. St. 210.

But, in behalf of defendant in error it is contended in argument that there are two grounds upon which the responsibility of the defendant for the act of Hughes may be based. First, a wagon and team of horses constitute a dangerous attraction to young children on the street, if operated with a want of reasonable care for their safety. Second, construing the servant's authority in this case in the most limited way, he nevertheless had authority to drive and to stop driving when he observed or knew any one to be in danger from the progress of the wagon. In support of the first ground, Thompson on Negligence, vol. 1, sec. 25, is cited. It is sufficient to say that the citation is not applicable. In support of the second ground, the Am. & Eng. Enc. of Law (2nd ed.) Vol. 21, p. 474, is cited, where some author, after a discussion of the law of injury to children "by attractive nuisance," further says: "that with stronger reason where the presence of a child trespasser is actually known to a party, or where such presence would have been known had reasonable care been exercised, there may be liability in negligence for injuries sustained—a doctrine acquiesced in by even the strongest advocates of the rule that there is no duty to trespassers." The principle of liability in the turn-table cases, and other dangerous machines attractive to children and negligently left exposed, so that children are liable, to come in contact with them, is also sought to be applied to this coal wagon under the circumstances of this case. The maxim *sic utere tuo ut alienum non laedas* is also urged as expressing the obligation of the defendant to the plaintiff, upon the theory that any duty of the driver Hughes in connection with the wagon which would have devolved upon "his master if he (it) had been driving it personally down the

street was delegated to the servant, if not expressly, then by implication of law."

In our opinion these principles and theories cannot be legally applied to the facts of this case. However greatly we may regret the injury which this poor boy has sustained, and however much we might be inclined to search for some way of compensating him for the injury, we find no warrant in the law for affirming this judgment, whereby the amount of the judgment shall be taken from the defendant and given to the plaintiff for damages for injuries which the defendant did not cause.

The judgment is reversed with a finding of facts.

*Reversed.*