Jones, J.,
dissenting. I dissent from this judgment. In doing so I feel warranted in saying that the judgment is supported neither by sound legal reason, nor by judicial authority in other states, where similar facts are involved. Since this de *94 cisión was announced the New York court of appeals, in two separate cases, recently published, has denied liability in cases of this character. I refer to Goldberg v. Borden’s Condensed Milk Co., 227 N. Y., 465, 125 N. E. Rep., 807, and Rolfe v. Hewitt, 227 N. Y., 486, 125 N. E. Rep., 804.
In the Goldberg case the syllabus reads: “Where a driver, acting contrary to express orders, invites a boy to ride on his wagon, which is started so suddenly that the boy is thrown off and injured, the employer is not liable for the injuries.” There the driver of a milk wagon had invited a boy eleven years of age to ride with him. While the boy was getting upon the wagon the driver whipped up his horses so suddenly that the boy was thrown to the ground. As a predicate for his holding, McLaughlin, J., said: “Huber [the driver] had no authority to invite the plaintiff to ride; in fact he was acting contrary to express orders of his employer. When he gave the invitation he did an act outside the 'scope of his employment, and the defendant was not responsible for the injuries caused by the driver’s negligence while plaintiff was thus riding.”
In the Rolfe case, also decided last month by the same court of appeals, it was held in the syllabus: “Where deceased was invited to ride in defendant’s automobile by the chauffeur, not on defendant’s business, and contrary to his orders, defendant is not liable for his death, though caused by the chauffeur’s negligence.’’’ However, these New York decisions merely sustain the principle announced by other courts in this country, which are cited later in this opinion.
*95 In this case the facts are without dispute. The Higbee Company was engaged in the business of conducting a retail store for the sale of merchandise. Komko was its employe, operating an automobile truck and delivering merchandise. Komko had finished making his last delivery, and while driving the truck homeward to the garage of The Higbee Company, the plaintiff and two other boys asked Komko to let them ride a part of the way. The employe told them to get on. In this he violated the instructions of his employer. Plaintiff boarded the running board of the truck.
The legal principle is well settled that an employer is not liable for the tortious act of his servant: (a)unless the servant or employe was engaged at the time in serving his employer, or, stated in other words, unless the act was done in the execution of the service for which he was employed; (b) and if thus engaged, the act must be within the scope of the servant’s employment. In this state this rule of liability has been often stated and maintained. The Little Miami Rd. Co. v. Wetmore, 19 Ohio St., 110; The Lima Ry. Co. v. Little, 67 Ohio St, 91; The White Oak Coal Co. v. Rivoux, Admx., 88 Ohio St., 18, and Stranahan Bros. Catering Co. v. Coit, 55 Ohio St., 398.
The act of Komko in inviting the boys to ride on his way homeward may have been done in the course of his employment. But that is not sufficient. In order to hold his employer liable, within the principle stated, the invitation as well must have been within the scope of his employment. The sole question for judicial consideration therefore *96 is, was the act of Komko in inviting the boys to ride on his automobile truck within the usual scope of his employment?
Had this case been one wherein Komko, on this occasion, had invited another to place his goods in the automobile truck for the latter’s convenience, and the goods had been damaged by the negligent act of the driver, upon what principle could the employer be held liable to the owner of the damaged goods? Or, let us assume another case. A orders his chauffeur to bring his automobile to his office, and while pursuing that engagement the chauffeur loads the vehicle for the convenience of the occupants. In case of injury to the occupants by the negligent acts of the chauffeur would the owner of the automobile be held liable? In the one case the chauffeur was employed solely to go after the employer, while, in this, The Higbee Company’s authority extended only to the hauling and delivery of merchandise. In neither casé did the authority of the employer extend or apprehend the use of the vehicle for the conveyance of passengers. The rule is well stated by Judge Cooley:
“And it will readily occur to' every mind that the master cannot, in reason, be held responsible generally for whatever wrongful conduct the servant may be guilty of. A liability so extensive would make him guarantor of the servant’s good conduct, and would put him under a responsibility which prudent men would hesitate to assume, except under the stress of necessity. Even the parent is not made chargeable generally for the torts of his child; and if he cannot justly be held responsible *97 for the conduct of one whom the law submits to his general direction and discipline, much less could another be held liable, generally, for the acts of a servant over whom his control is comparatively slight, and who is not submitted to his disciplinary authority.” 2 Cooley on Torts (3 ed.), page 1016, Section 625.
To the same effect is the following from 2 Mechem on Agency (2 ed.), Section 1880:
“Not every act which an agent or servant may do while he is in the place appointed for the service, or during the time in which he is engaged in the performance, can be deemed to be within the course of the employment, or within the scope of the authority. The test lies deeper than that; it adheres in the relation which the act done bears to the employment. The act cannot be deemed to be within the course of the employment, unless, upon looking at it, it can fairly be said to be a natural, not disconnected and not extraordinary part or incident of the service contemplated.”
It is intimated in the majority opinion that the rule is different when goods are being carried by the servant without authority. I confess my inability to follow this distinction. In this particular case, had the driver asked one who was upon the sidewalk with a basket of eggs to ride upon this occasion, if the legal duty of care should be conceded, I fail to see why the person invited should be permitted to recover, and damages denied for the loss of his eggs or injury to his clothing. If this action had been brought against Komko, the *98 driver, or if the element of invitation were not involved, or the driver had negligently injured the infant upon the streets of the city, a different principle would apply, entailing liability, upon the part of the employer. However, in this case the authorities are in practical unanimity in holding the employer free from liability. The reason given is that the act of inviting others upon a vehicle of this character is entirely without the scope of the agent’s authority, and in none of the cases does the liability of the principal hinge upon the degree of negligence used by his employe. The following cases, among many others, support the principle here indicated: Driscoll v. Scanlon, 165 Mass., 348; Schulwitz v. Delta Lumber Co., 126 Mich., 559; Dover, Admr., v. Mayes Manufacturing Co., 157 N. C, 324; Kiernan v. New Jersey Ice Co., 74 N. J. L., 175; Scott v. Peabody Coal Co., 153 Ill. App., 103; Hoar, Admx., v. Maine Central Rd. Co., 70 Me., 65; Bowler v. O’Connell et al., 162 Mass., 319, and Foster-Herbert Cut Stone Co. v. Pugh, 115 Tenn., 688.
The syllabus in the North Carolina case, supra, is as follows: “One who is employed to drive a team of mules to a wagon for the ordinary purposes of hauling has no implied authority from the master to permit boys to ride on the wagon, as such is not within the scope of the servant’s employment.”
In the Illinois case, supra, the court holds in its syllabus: “If a servant.employed by a master in the driving of a coal wagon has been instructed not to permit boys to ride with him on such wagon *99 and he violates such instructions and the boy riding upon such wagon is injured, the master is not liable.”
In the Michigan case, supra, the following is held in the syllabus: “A master is not liable for the negligence of his servant in permitting a boy, contrary to the master’s orders, to ride upon a wagon provided for the servant’s use in hauling lumber, such act not being within the scope of the servant’s employment.”
It would appear from the opinion of the court of appeals in the case at bar that its judgment rested upon the theory that although the invitation extended to the boys may have been without the scope of authority, still, the employe having exceeded his authority, the infant could then have been regarded as a trespasser to whom the employer owed a duty of not injuring him by wanton negligence upon the part of the employe. This feature of the case begs the entire question and eliminates from the case one cardinal element which is necessary to impose liability upon the employer. This elementary principle is that the act of the employe must be within the scope of his employment. If the theory of the court of appeals were correct it could as well be said that a liability would likewise accrue if Komko had departed from his course of employment and driven the boys to the city lake front for their own convenience and injured them on the way.
The fallacy lies in considering the negligent driving of the employe solely as the causal act pro- *100 during the injury. The act of driving was within the scope of Komko’s employment, it is true. But it was the unauthorized act — that of giving an invitation to the boys to ride — which was without the scope of Komko’s employment. The record discloses,. and it is not disputed, that this employe had been given explicit instructions not to let any one ride on the truck. The unauthorized act of invitation produced the train of events that followed, and the reckless driving was consequential. In the case of Driscoll v. Scanlon, supra, the same theory of liability was argued and presented as in this case. The teamster had invited a boy to ride with him upon a dump-cart. The teamster asked the infant to take the reins, while he fell asleep. It was there argued that the court might look only to the later moment, when the plaintiff was under the wheels, and not to the unauthorized act of the teamster in inviting him to drive, but Judge Holmes, of the Massachusetts court, disposed of that contention by saying in his opinion: “The driver’s slumber was so intimately connected with the unauthorized act that it is impossible to separate the two. The driver would not have been asleep and the plaintiff would not have fallen but for the driver’s unauthorized act, and if the plaintiff had not been driving.” The following is the syllabus in that case: “If a driver of a cart invites an infant to drive with him, either for pleasure or to take his place in driving while he sleeps, and the infant falls from the cart and is run over by it, the act is outside the driver’s authority and his master is not liable to the infant.”
*101 The rule of liability announced in the syllabus was condemned in the case of Kiernan v. Ice Co., supra. There an employe, Lahey, gave permission to an infant to take a piece of ice from his wagon, and while the infant was in the act of taking the piece of ice the servant assaulted him. In the course of his opinion the judge said, page 177: “The only way by which the defendant could be held liable for the injury in the present instance is upon the theory that the invitation by Lahey is to be entirely disregarded in the transaction. In other words, the theory is this: That Lahey,' having no authority to extend to the plaintiff a license to take the ice, therefore when the latter got upon the steps of the wagon he stood as any other trespasser.” But the court disposing of that theory said: “The question is whether it was within the scope of his authority to create the condition which he was authorized to prevent, and then to represent the company in abolishing those conditions ? It is apparent that, according to' the plaintiff’s testimony, there would have been no trespass had there been no invitation. The plaintiff was doing the very act which Lahey had licensed him to do, and nothing more.”
That the rule of principal and agent is involved in this case is recognized by the syllabus which establishes liability for “conduct of the employe while in the course and within the scope of his employment.” However, the syllabus begs the entire question when it declares that here the wanton conduct of the employe was done within the scope of *102 his employment. If the acts of the employe were “in the course and within the scope of his employment,” then his principal would be liable whether his acts constituted wanton or “mere” negligence. This principle is elementary. In The Nelson Business College Co. v. Lloyd, 60 Ohio St., 448, Minshall, J., at page 454, says that it is “clearly settled that the master is liable for the willful, or even malicious, as well as negligent acts of a servant, done in the course of his ¿mployment and within the scope of his authority.” And in Stranahan Co. v. Coit, 55 Ohio St., 413, Spear, J., said: “One principle seems to be well settled by the later authorities, viz: That if the act of the servant which has occasioned the mischief is within the scope of the employment, the fact that it was maliciously done does not affect the question of the master’s liability under a proper rule of damages.” And in Lima Railway Co. v. Little, 67 Ohio St., 100, the judge in the course of his opinion said that the test of the master’s liability was whether the act of the servant was done while in the service of and acting for the master in the prosecution of his business, and that such was the rule “whether the act complained of be wanton and willful or whether it be merely negligent on the part of the servant or employe.”
The measure of the principal’s liability for the negligence of his employe, whether wanton or ordinary, is not based upon the degree of negligence upon the part of the employe, but upon the fact whether his conduct was within the scope of his *103 authority. The plaintiff was not a trespasser. He got upon the wagon with the consent of the driver. He was not a licensee of the. master, but was a licensee of the agent only. Rolfe v. Hewitt, supra.
I now advert to some of the cases cited in the majority opinion, and do so only because the principles there decided are readily distinguishable from those in other cases decided by the courts of the same states which deny liability under the facts involved here. In Enright v. Pittsburg Junction Rd. Co., 198 Pa. St., 166, the element of invitation by the employe was not involved. In that case the court cited the earlier case of Flower et al. v. Pennsylvania Rd. Co., 69 Pa. St., 210, which denied liability where a boy was invited to ride. Neither was the element of invitation involved in the cited case of Powers v. Harlow, 53 Mich., 507. But the principle here involved was decided in the later Michigan case, Schulwitz v. Delta Lumber Co., supra. That the courts of Illinois recognize that the cited case of C., M. & St. P. Ry. Co. v. West, 125 Ill., 320, did not apply to facts such as we have in the case at bar, is shown by the decision of the appellate court of that state twenty-two years later, in Scott v. Peabody Coal Co., 153 Ill. App., 103, where the syllabus is as follows: “If a servant employed by a master in the driving of a coal wagon has been instructed not to permit boys to ride with him on such wagon and he violates such instructions and the boy riding upon such wagon is injured, the master is not liable.”
*104 In Aiken v. Holyoke Street Railway Co., 184 Mass., 269, the question of the employe’s invitation was neither presented nor discussed. But following its earlier decisions upon the same questions, the supreme judicial court of Massachusetts in Walker v. Fuller, 223 Mass., 566, denied recovery where the element of invitation was present.
This case was certified to this court by the court of appeals of the sixth district, sitting by designation in Cuyahoga county, in the eighth appellate district. In certifying this case to this court the sixth appellate district declared and found in its journal entry that its judgment was in direct conflict with the judgment pronounced upon the same question by the court of appeals of the eighth appellate district in the case of Goff-Kirby Coal Co. v. Skufca (9 Ohio App., 177), decided by the latter court on May 7, 1917. That a conflict exists is beyond doubt, and it resulted from the decision of two separate courts of appeals sitting in Cuyahoga county upon substantially the same state of facts. In this case the liability of the employer was upheld, but in the Skufca case this liability was denied. By his motion, No. 9579 in this court, Skufca, the injured party, asked for certification of the record in that case to this court. His appeal was denied. Whether it was because his case was not one of great general interest, or that no error intervened, does not appear, but he was denied relief. Why he was denied is. now immaterial, since in Cuyahoga county we have this situation: Upon substantially the same state of *105 facts, and in the same county, one infant plaintiff is allowed to recover, and damages denied to the other. In the case of Goff-Kirby Coal Co. v. Skufca, supra, the facts were as follows: Skufca, a boy of nine years of age, and four or five other boys, returning from school, were invited to ride by the driver of a coal wagon owned by the coal company. The boy requested the driver to permit him to alight from the wagon, but the request was refused. In attempting to alight from the wagon, and in consequence of the negligent conduct of the driver, which the plaintiff claimed was reckless and wilful, the boy was injured. In the common pleas court the boy, Skufca, recovered a judgment, which the court of appeals reversed, although wilful negligence was urged in the case, because the act of the driver was not within the scope of his employment. Certification of the case was refused by this court.