## P. M. Davidson, Appellee, v. Illinois Central Railroad Company, Appellant.

1. PASSENGER AND CARRIER—*when relation does not exist.* If a person has not placed himself in the care of the carrier the relation of passenger and carrier does not exist.

2. PASSENGER AND CARRIER—*what does not justify boarding train except from station platform.* The fact that persons may frequently have boarded trains from a point other than the depot platform, does not justify the same, unless it be shown that the carrier consented thereto and approved of such course.

Action in case for personal injuries. Appeal from the Circuit Court of Sangamon county; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the May term, 1911. Reversed. Opinion filed October 9, 1911. Rehearing denied November 8, 1911.

GRAHAM & GRAHAM, for appellant.

GEORGE M. MORGAN and JOHN J. BUNDY, for appellee.

MR. JUSTICE FROST delivered the opinion of the court.

Appellee obtained judgment for $5,000 damages in the Circuit Court of Sangamon county against appellant, for the cutting off of appellee's left hand by a passenger train of appellant at its Decatur station, June 12, 1909.

The depot of appellant is west of its three tracks, the track nearest the depot being known as a passing track, the next one east as the south-bound main track

and the third, the north-bound main track. A platform extended from the depot out to the nearest rail on the north-bound track, and extended north and south on the west side of its tracks a distance of 512 feet from the Wabash crossing to El Dorado street. The platform was about 15 feet wide from a point about 20 feet south of the depot for a distance of about 150 feet to El Dorado street. Between the west rail of the passing track and the west rail of the north-bound track, the platform ran north and south about 350 feet, its south end being irregular and near a standpipe used by appellant's engines for taking water. South of the standpipe, the space east of the 15 foot walk running to El Dorado street was filled in with ballast between the rails and between the tracks so that in most places only the rails projected above the surface. A short distance south of the wooden platform between the north and the south-bound tracks, there was a stake or stub end of a post projecting a few inches above the surface. On the day in question, appellee came to the depot about 10 o'clock p. m. and was informed, as he says, that the train was late, so that he then went to the Angle Hotel, which was situated southwesterly from the depot. From there, he returned to the depot down El Dorado street to the 15 foot platform, and started north toward the depot. When within about 50 feet of a train which was then standing on the south-bound track, he noticed that it was an Illinois Central train, and commenced to walk a little faster. Noticing some trucks, as he says, on the platform when within 25 feet of the engine, he stepped off the platform and walked across the passing track over the south-bound main track, proceeding toward the train, and when walking fast or running he struck his left foot against some obstruction and fell, his left hand going under the wheels of the train, which had then moved, as he says, about the length of a coach. The negligence charged

in the declaration is the permitting of the post to be
in the position where it was, causing appellee to fall.
Appellant contends that this case should be reversed,
first, because appellee did not properly offer himself
as a passenger, and that defendant owed no duty to
him except not to wantonly injure him, and second, that
even though appellee was a passenger, appellant had
provided a safe platform for its passengers, and that
appellee was guilty of negligence in taking the route
he did, and third, the presence of the stake or post was
not the proximate cause of the injury.

Was appellee a passenger at the time of the injury?
It is true the record discloses that he had purchased a
ticket and was attempting to get upon the train, but
unless he was proceeding properly, he would not there-
by become a passenger.  One becomes a passenger on
a railroad train when he puts himself under the care
and is received as a passenger by the company.  The
excuse given by appellee for not proceeding along the
platform to where the passenger coach stood in board-
ing the train from the main platform was that there
were some trucks obstructing the way.  Appellee, in
his testimony on the trial, states there were three or
four trucks.  In a statement given by him previous to
the trial he states there were two trucks, but the num-
ber or position of the trucks is not definitely shown by
the evidence.  Regardless of the number or position
of the trucks, however, it does not appear but that ap-
pellee could have easily avoided them and reached the
train in safety, by way of the main platform.  Instead
of doing this he chose to pass in front of the engine
along a way not provided for passengers to reach the
train when it was so dark that he could not see obstruc-
tions in his way.

The depot and platform of appellant were obvious.
The place where trains stopped was known to appellee.
He was familiar with the entire situation, and had.

known it for years.   He knew that there was no plat-
form south of the standpipe.   He knew he was getting
off the boardwalk and did not know what the condition
was between the tracks.   He abandoned the board plat-
form attended by trainmen which appellant offered him
and attempted to become a passenger by going through
a dark place between the tracks away from the place
where the train crew could observe him.   It was doubt-
less his intention to take the train from the east side
while it was moving and for that purpose he was hurry-
ing along in the dark without the ability to see any ob-
struction which might be in the way.

In the case of C. & E. I. Ry. Co. v. Jennings, 190 Ill.
478, the court said: ''The company certainly has a
right to know that the relation and duty exist, and the
passenger must be at some place provided by the com-
pany for passengers, or some place occupied or used
by them in waiting  for or getting on or off  trains.
Whenever a person goes into such place with the inten-
tion of taking passage, he may fairly expect that the
company will understand he is a passenger and pro-
tect him.   If he could be a passenger before reaching
such a place there would be no limit or place where it
could be said he became a passenger.   The intention
of taking a train would only prove a purpose to enter
into the contract relation, but would not create it.''

In the case of Spannagle v. C. & A. R. R. Co., 31 Ill.
App. 460, the court said: ''When he became aware of
the approach of the train, plaintiff endeavored to reach
the depot to take the train and arriving at the platform
after the train was in motion endeavored to get aboard,
and was injured.   Not having placed himself in care
of the carrier, there was no relation between him and
the carrier by which it became the duty of the carrier
to hold its train for any length of time.   For any in-
jury he received while endeavoring to get aboard the

train while in motion he must seek redress as a stranger.''

There is some proof in the record that passengers frequently boarded the south-bound train from the side opposite the depot and for that reason an invitation was extended to the plaintiff to use that way for boarding the train. There was no proof that the company consented and approved such acts, except that it had done nothing to make such a course by passengers impossible. This situation is very similar to the one that existed in the case of O'Donnell v. C. & N. W. Ry. Co., 106 Ill. App. 287, and the court in that case held that the plaintiff was negligent in not taking the way provided by the company.

In Raymond v. C. B. & Q. R. R. Co., 126 Ill. App. 240, the appellate court said: ''Plaintiff proved that for a long time prior to his injury many other persons in going to the depot had crossed these tracks in the general course he was pursuing, and that the defendants had taken no steps to prevent such travel. How could defendants prevent foot passengers from passing along the tracks? Even if they had enclosed the station grounds at every other place they must have left open the places where their main and switch tracks cross the streets and pass into the station grounds. No law required them to erect barriers across their own tracks or to station guards at each track to forcibly eject foot travellers who leave the streets on such tracks. Defendants held out no inducement to foot passengers approaching its stations to believe that its trains would not go upon its side tracks nor did it authorize them to travel its tracks merely by its failure to mount a guard to eject them.''

It is claimed that the presence of the stake or stub was not the proximate cause of the injury; that there is no proof in the record that plaintiff struck his foot against the stub and that the evidence shows that his

hand was cut off at least six feet south of the stub when if he had fallen by reason of striking his foot against the stub, in all probability his hand would have been cut off at a point at least six feet north of the stub. The view that we have taken of the case does not require us to discuss this point.

We are of the opinion that appellee did not become a passenger of the defendant on the occasion in question, and that appellant owed him no duty as such, and that appellee was guilty of negligence which contributed to his injury.

For these reasons the judgment of the court below will be reversed.

*Reversed.*

Finding of facts, to be incorporated in the judgment:

We find that appellee did not become a passenger of appellant on the occasion in question, and that he was guilty of negligence which contributed to his injury.