ELIZA A. TODD, Admx., Defendant in Error, *vs.* THE LOUISVILLE AND NASHVILLE RAILROAD COMPANY, Plaintiff in Error.

*Opinion filed June 22, 1916.*

1. CARRIERS—*carrier is not bound to accept an intoxicated person as a passenger.* The general rule as to the duty of a common carrier to accept passengers is subject to certain exceptions, one of which is that a carrier is not bound to accept as a passenger one who is intoxicated to such an extent as to render it probable that he will be disagreeable or annoying or substantially interfere with the comfort of other passengers.

2. SAME—*when person is not a passenger.* The relation of carrier and passenger is based upon contract, express or implied, and a person to whom the carrier's agent has refused to sell a ticket and who is refused acceptance as a passenger by the servants in charge of the train does not become a passenger by attempting to board the moving train in spite of the efforts of the trainmen to keep him off.

3. SAME—*when person is guilty of negligence in attempting to board moving train.* Even though it is not negligence *per se,* under all circumstances, for a person to attempt to board a moving train, yet it is negligence as a matter of law for a person to attempt to do so after he has been warned by the trainmen in charge of the train to keep off.

4. SAME—*person cannot become a passenger against the will of the carrier.* A person who has been refused passage on a train cannot force his way into the train against the will of the servants in charge and thereby become a passenger; and if, in attempting to force his way on the train, he falls beneath the train and is killed, the railroad company is not liable under the law governing the relation of carrier and passenger.

5. DAMAGES—*party can recover only such damages as immediately flow from injury.* A party suing for damages for an injury can recover only such damages as immediately flow from the injury, and damages caused by other agencies, even though remotely connected with those causing the injury, cannot be awarded.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Hamilton county; the Hon. JACOB R. CREIGHTON, Judge, presiding.

JAMES M. HAMILL, and CHARLES P. HAMILL, for plaintiff in error.

THOMAS H. CREIGHTON, and H. ANDERSON, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action on the case brought by defendant in error, Eliza A. Todd, as administratrix of the estate of her husband, against plaintiff in error, the Louisville and Nashville Railroad Company, in the circuit court of Hamilton county, to recover damages for his death while attempting to board a train of said railroad November 29, 1913. The jury returned a verdict in favor of the defendant in error, and the judgment, on appeal, was affirmed by the Appellate Court. The case is brought here on a writ of *certiorari.*

The deceased, Jonathan N. Todd, at the time of his death was about thirty-five years of age, and resided with his family, consisting of his wife and three minor children, at Belle Prairie, in Hamilton county, where he had charge of the telephone switchboard. He also wrote insurance and farmed a little. On the morning of the day he was killed Todd drove with his team a few miles from his home to McLeansboro, on the line of plaintiff in error's railroad. He put the team in a livery stable there, leaving word that he would return for it the same evening. He then went on plaintiff in error's railroad train from McLeansboro, about twenty-four miles east, to Carmi, on some insurance business. After transacting that business he went, at about two o'clock P. M., to plaintiff in error's station and applied to the agent for a ticket back to McLeansboro. The agent refused to sell the ticket, testifying on the trial that Todd seemed to be intoxicated and that it was against the rules of the railway company to sell a ticket to a person under those circumstances. Different witnesses for both parties testified as to whether, in their judgment, Todd was intoxi-

cated from that time up to the time he was killed. Most of defendant in error's witnesses stated that they did not think he was intoxicated; that there was nothing in his manner, either in walking or talking, to indicate such condition. Practically all of plaintiff in error's witnesses testified that he was intoxicated, some of them saying he staggered and talked loudly; that his breath smelled of liquor, and that if he was not drunk they never saw a man who was drunk. The testimony, without contradiction, is to the effect that after he first went to the station he went away and did not return to the station until shortly before train time, which was about 3:15 in the afternoon; that at that time he came from a saloon located west of the station, and when he reached the platform he accidentally dropped his overcoat and broke a bottle of whisky which was in the pocket; that thereupon he went back to the saloon and a few minutes later returned to the platform, where he engaged in loud conversation with an insurance agent, Thomas Garrison, apparently being angry with Garrison over some business matter. The evidence is not absolutely clear as to whether he came to the station the second time before or just at the time the train came in. He continued to talk with Garrison until the bell began to ring for the train to start. The evidence shows, without controversy, that the train stopped at the station three or four minutes, the engine taking water at that place. Plaintiff in error's railroad runs through Carmi in an easterly and westerly direction, and the Big Four railroad crosses it near the station. There is a union station there for the two roads. Todd, when in conversation with Garrison, was on the depot platform of the Big Four. When the bell rang as a signal for starting, Todd started to cross the tracks of the Big Four towards the train. The train consisted of six cars. The testimony of certain witnesses for defendant in error is to the effect that when Todd reached the front end of the smoking car of the train he attempted to get on before the train started,

while most of the witnesses for plaintiff in error testified
that the train had already started before he first attempted
to get on. They all agree that the porter on plaintiff in er-
ror's train blocked Todd's attempt and prevented him from
getting onto the front end of the smoking car by keep-
ing between him and the steps, and that Todd then started
toward the rear of the smoking car, with the porter walk-
ing along between him and the car; that when he reached
the rear of the smoker he again attempted to get on and
was prevented by the porter. All the witnesses agree that
the train was then moving and that Todd and the porter
walked along the side of the next car,—the ladies' coach,—
to the rear, and Todd again attempted to get onto the rear
of that car and was prevented by the porter. The testi-
mony of some of the witnesses for defendant in error is
to the effect that Todd succeeded in getting onto the rear
step of the ladies' coach and was pushed or pulled off by
the porter, while other testimony is to the effect that he
never succeeded in getting onto the step. The testimony is
in conflict whether he took hold of the back-rod or hand-
hold on the front end of the next coach, which was a vesti-
buled sleeper, the door of which was closed. Some of the
witnesses testified that instead of getting hold of either of
these hand-holds he grabbed hold of the porter's leg, as the
latter was standing on the rear step of the ladies' coach.
Whatever the facts may be on this point, after keeping the
hold he had for a short distance he fell off and rolled from
the depot platform under the train and was killed. There
was also some conflict in the testimony as to whether the
porter actually got upon the train before the accident or
whether he was on the depot platform all the time. The
porter testified that he heard Todd talking in a loud man-
ner on the Big Four platform, and just as the train was
starting someone shouted, as Todd was crossing the Big
Four tracks, not to let him try to get on, as he would get
hurt. One witness, at least, testified that Garrison shouted

this. Garrison himself denied saying anything of the kind. As they were walking beside the train, the testimony is to the effect that Todd called the porter an offensive name and said to him, "If I can't get on this train you won't." Other trainmen heard the dispute and saw the porter and Todd moving along beside the cars. As soon as the front brakeman or flagman, looking out from the steps of the front end of the ladies' coach, saw Todd being dragged by the side of the train he at once applied the air-brake and the train quickly came to a stop, Todd's body being found under the train about midway of the sleeper. A bottle of whisky was found in his overcoat pocket. He had told a friend in McLeansboro that he would bring him a bottle of whisky from Carmi, McLeansboro being so-called dry territory.

The first two counts of the declaration alleged that Todd purchased a ticket from Carmi to McLeansboro. There being no evidence to support this allegation in these counts the trial court instructed the jury to that effect. The third, fourth and fifth counts alleged, in substance, that Todd was waiting to become a passenger; that he was ready and willing to pay his fare after entering the train, and that it was plaintiff in error's duty to permit him to do so; that while he was trying to do so plaintiff in error negligently and violently pushed or pulled Todd from the step while the train was in motion. At the close of the evidence for plaintiff in error, and again at the close of all the evidence, plaintiff in error moved the court to instruct the jury to find it not guilty. These motions were denied.

The general rule is that a common carrier is bound to accept as passengers all persons offering themselves at the proper time and in the proper manner and who are willing to pay regular fare. But this rule is not without limitations. There are cases in which a railroad company may rightfully refuse to accept persons as passengers. The carrier is not bound to accept one who is intoxicated to such an extent as to render it probable that he would be dis-

agreeable or annoying or would substantially interfere with the comfort of other passengers. (4 R. C. L. 1061, 1062; 4 Elliott on Railroads,—2d ed.—sec. 1577; 2 Hutchinson on Carriers,—3d ed.—sec. 969; 3 Thompson on Negligence,—2d ed.—sec. 2542; *Hillman* v. *Georgia Railroad Co.* 8 Ann. Cas. 222, and note; *Connors* v. *Cunard Steamship Co.* (Mass.) 26 L. R. A. [N. S.] 171, note.) This court has held that a railroad company has a right to require of its passengers the observance of all such reasonable rules as tend to promote and insure the comfort and convenience of passengers, to preserve good order and propriety of behavior, to secure the safety of the train and the proper conduct of its business as a common carrier. (*Illinois Central Railroad Co.* v. *Whittemore,* 43 Ill. 420.) A statute passed in 1911 makes it unlawful to drink any intoxicating liquor upon a depot platform or in the station or in any car upon any railroad in this State, and also makes a person liable to punishment for being intoxicated in any of those places, and authorizes the conductor of a railroad train to arrest, without warrant, any person violating the provisions of said act. (Laws of 1911, p. 462.) This statute has been held valid. *Tarantina* v. *Louisville and Nashville Railroad Co.* 254 Ill. 624.

The relation of carrier and passenger is based on contract, express or implied. (*Illinois Central Railroad Co.* v. *O'Keefe,* 168 Ill. 115; 4 Elliott on Railroads,—2d ed.— sec. 1578; 4 R. C. L. 1003.) One does not become a passenger until he puts himself in charge of, and has been expressly or impliedly received as such by, the carrier. (*Webster* v. *Fitchburg Railroad Co.* 161 Mass. 298.) In ordinary cases, not only must the person signify his intention to take passage with the carrier, either by words or conduct, but those in charge must assent, by words or conduct, to the person becoming a passenger. (4 R. C. L. 1004; 4 Elliott on Railroads,—2d ed.—sec. 1578*b*.) From the nature of the business as conducted by such carriers no

express contract is made, in the great majority of cases, with those who ride on steam cars. The essential elements of the contract must ordinarily be implied from the acts of the parties. (4 R. C. L. 1037.) It is impossible to give in any definite rule the acts necessary to create this relation. While general principles can be stated, each case must be judged largely by its own facts. The acceptance of the carrier is needed, and he ought to accept where there is no reasonable objection. "Still, it does not necessarily follow that it has consented or will consent in any given case. For no good reason it may decline to accept the offered passenger, and in such case he cannot become a passenger by forcing his way upon the car against the will of the carrier. His remedy is by way of damages for the unwarrantable refusal to accept him." *Hogner* v. *Boston Elevated Railway Co.* 198 Mass. 260; *Illinois Central Railroad Co.* v. *O'Keefe, supra;* 4 Elliott on Railroads, (2d ed.) sec. 1581.

A party suing for an injury can only recover such damages as immediately flow therefrom. Damages caused by other agencies, even though remotely connected with those causing the injury, cannot be awarded. Where a railroad train wrongfully fails to stop and take on a passenger, he is entitled to recover nominal damages and such actual damages as he may sustain by reason of the delay, but he has no right to inflict injury on himself and thus enhance the damages. *Indianapolis, Bloomington and Western Railway Co.* v. *Birney,* 71 Ill. 391.

In most jurisdictions the general rule is that it is presumably negligence *per se* for a person to attempt to get on or off a moving train. (5 Am. & Eng. Ency. of Law,— 2d ed.—655; 5 R. C. L. 36; 4 Elliott on Railroads,— 2d ed.—sec. 1628; 3 Hutchinson on Carriers,—3d ed.— sec. 1181.) It is stated, however, in many cases that an attempt to get on or off a moving train is not, as a matter of law, negligence *per se,* but a question, upon all the facts, to be submitted to the jury. (*Chicago and Alton Railroad Co.*

v. *Gore,* 202 Ill. 188; *Baltimore and Ohio Southwestern Railroad Co.* v. *Mullen,* 217 id. 203; 5 R. C. L. 37.) We know of no authority that justifies a person in boarding a moving train when warned not to do so by the officials in charge. (See *Boulfrois* v. *United Traction Co.* 2 Ann. Cas. 938, and authorities cited in note.) This court has held that where the carrier's train started at the regular time of starting and had been in proper position to receive passengers a sufficient time to allow all persons who desired to ride to board the train and take seats, a person wishing to be a passenger, who attempted, after the train started, to get on and was injured by reason of the car being in motion was guilty of such negligence as to preclude recovery. (*Chicago and Northwestern Railway Co.* v. *Scates,* 90 Ill. 586; *Ohio and Mississippi Railway Co.* v. *Stratton,* 78 id. 88; *Illinois Central Railroad Co.* v. *Lutz,* 84 id. 598; see, also, *Illinois Central Railroad Co.* v. *Slatton,* 54 Ill. 133.) What facts constitute the relation of carrier and passenger is a question of law. (*Chicago and Eastern Illinois Railroad Co.* v. *Jennings,* 190 Ill. 478.) The existence or non-existence of such facts, in each particular case, is ordinarily a question of fact to be determined by the jury and not one of law to be passed on by the court. Where, however, there is no conflict as to the facts, the question whether plaintiff was a passenger must necessarily then be one of law for the court to decide. (4 R. C. L. 1029, and cited cases; 3 Hutchinson on Carriers,—3d ed.—secs. 1174, 1175.) While there is some conflict in the testimony as to whether Todd was intoxicated at the time of his death and whether the train was moving at the time he first tried to get on, there is no controversy that the employees in charge of the train never assented, either directly or impliedly, to his becoming a passenger on the train. All the testimony is to the effect that the employees of the company declined and refused to accept him as a passenger. The authorities all agree that a person cannot force his way upon a train against the will

of the carrier and thereby become a passenger. Plaintiff in error, therefore, was not liable to Todd's administratrix on the ground that the relation between said company and Todd was that of carrier and passenger. If any liability existed on the part of the railroad company for this accident it was because of the refusal to enter into the relation of carrier and passenger with Todd and permit him to become a passenger. (*Illinois Central Railroad Co.* v. *O'Keefe, supra.*) There are no allegations in any count of this declaration that authorized any recovery because of such refusal to accept him as a passenger. On this record, therefore, the trial court should have instructed the jury to find for plaintiff in error.

The judgments of the circuit and Appellate Courts will be reversed.

*Judgment reversed.*