Howard W. Foote, Appellant, v. Chicago, North Shore
& Milwaukee Railroad Company, Appellee.

Gen. No. 33,855.

Opinion filed March 11, 1930.

Joseph D. Ryan, for appellant.

Gardner, Foote, Burns & Morrow, for appellee; Walter M. Fowler, of counsel.

Mr. Presiding Justice Barnes delivered the opinion of the court.

This is an appeal from a verdict and judgment for defendant in a personal injury suit.

The declaration charged in three counts, in varying language, the relationship of common carrier and passenger between the parties, and that defendant negligently caused the train to be started and accelerated into speed while plaintiff was attempting to board the same. Defendant filed the general issue.

The points relied on for reversal are that the verdict is contrary to the evidence and law applicable thereto, that the court erred in giving certain instructions, and in denying the customary motions made at the close of the trial.

It is contended by appellee that plaintiff failed to establish the relationship of carrier and passenger for the reason that he failed to show any assent by defendant to plaintiff's becoming a passenger, and also that he failed to prove the exercise of due care on his part or negligence by defendant.

Defendant operated an electric interurban railway extending north and south through the village of Glencoe where it crosses Park Avenue, an east and west street, on the north side of which and just west of its tracks is its local ticket office. The train in question was a south bound express train which used the west track, and consisted of three cars. Such trains cus-

tomarily stopped with the front end about up to the north sidewalk of Park Avenue and did so stop on the occasion in question. From north of that sidewalk, for about 64 feet along the west side of that track is a concrete loading platform. North of it is a crushed stone extension 44 feet to a circular driveway. This driveway and another further north, about 200 feet, circle toward one another westward to the Chicago & Northwestern Railroad passenger station, northwest of defendant's station. The tracks of the Chicago & Northwestern Railroad are about 100 feet west of defendant's tracks. Immediately east of and alongside defendant's tracks was Green Bay road.

Plaintiff's home was east of Green Bay road and somewhat north of the circular driveways. He left his home on the morning in question intending to take a train of the Chicago & Northwestern Railroad Company. Seeing the train in question approaching on the electric line he concluded to take it, and in attempting to board the same received the injuries complained of.

There was a conductor or collector for each of the three cars in said train. As is customary, when it stopped at the station in question each got off the train and stood by an entrance to his car while passengers were discharged and received and until the customary signals were given. One stood at the rear entrance of the first car, one at the front entrance of the second car, and one at the front entrance of the third or rear car where passengers entered the respective cars. According to custom and rule, when they saw that there were no more persons to take the train the conductor at the rear car signaled to the conductor of the second car, and the latter signaled to the conductor of the first car, and he in turn to the motorman, each first looking along his car to see if anyone was there to board it. As the car started, each conductor stepped on his car and

proceeded to collect fares. These customs were known to plaintiff, and that they were observed in the instant case is not questioned. Each of the conductors so testified and that when he gave his signal he looked back along his car, saw no one along it, and stepped on his car as it started. The motorman testified that he also looked and saw no one along the cars when he sounded the gong and started the train.

After the train stopped, several passengers got off and others got on. It is quite clear from the entire testimony that before plaintiff attempted to board the train all other passengers and the conductors had boarded the cars. Plaintiff's own testimony harmonizes with this conclusion. Plaintiff testified that he was familiar with the customs of starting the train and that the conductor of the car which he attempted to enter had already got on his car and was just about entering the coach from the vestibule and that there was no one then standing on the platform of the car when he tried to board it.

Plaintiff testified that he crossed defendant's tracks before the arrival of the train, went southward along the crushed stone extension and had reached the cement platform when the front cars passed him. On the other hand there was testimony that he came around the rear of the train and hastened to get on the front entrance of the rear car after the train was in motion. He said he walked at moderate speed along the crushed stone path onto the cement platform up to the front entrance of the second car and attempted to board it while it was still at a stop; that he took hold of the grab irons and just as he got one foot on the step the car started with a jerk and accelerated so rapidly that it threw him off his balance; that he tried to hang on and "hopped along" for a few feet and tried to get his knee on the step and finally lost his handhold on one side and fell, rolling between the concrete platform and the track.

His only eyewitness of the accident testified that he did not see plaintiff until he had hold of the handrails, and that the conductor had got on the car "about a second or two before then"; that the trainmen had gotten on the train and there was no one on the station platform when plaintiff was trying to get on; that he hung onto the handrails "for about 15 feet when he lost his hold and fell." His testimony as well as plaintiff's harmonize with defendant's evidence in these respects and that all persons, including the conductors, had boarded the train before plaintiff attempted to board it, thus leaving as the main controverted question whether the train had already started when he made the attempt.

No question arises that the usual signals for starting the car, with which plaintiff was familiar, had not then been given. Under the undisputed facts he would be presumed to know they had been given. Before there was any intimation of the accident the conductors had proceeded to collect fares. Not until the conductor of the rear car gave the emergency signal to stop the train was anyone on the train apprised of it. He testified that as he stood on the front platform of his car collecting fares after the train had started he heard some one say, "Hold it! hold it!" and looking back saw plaintiff grab hold of the back rail of the front entrance to his car and then the front grab rail and lose his grip practically as testified to by plaintiff, and that he then immediately gave the stop signals. In harmony with his testimony three witnesses testified that plaintiff hurried from the rear to get on the car and grabbed hold of the grab rails while the car was in motion, and after all, including the conductors, had boarded the train. Defendant's several witnesses, some four or five besides the motorman and conductors, also testified that there was no jerking and sudden acceleration of speed in starting the car and that it started smoothly and slowly. The evidence tended to show that it had

gathered speed of about five or six miles an hour at the time of the accident. The unrefuted testimony of the motorman was to the effect that the mechanism is such that the car cannot start with a jerk or suddenly accelerated speed.

There was, as usual, where witnesses view occurrences from different angles, positions and distances, discrepancies and contradictions in the testimony, mostly as to minor details. It would subserve no good purpose to discuss them or their probabilities, or whether plaintiff tried to board the second or third car, if, as a matter of fact, he did not undertake to board the train, as the great preponderance of the evidence tends to show, until after it was in motion. On that important fact his testimony and that of one witness is to the effect that the train had not·started when he attempted to board it. Against him on that point is the testimony of three eyewitnesses and legitimate inferences from the testimony of several others and from the coincident facts that tend to corroborate the evidence that the train had started. While there is some difference in the testimony as to just where plaintiff was or came from immediately before attempting to board the car, whether from the rear of the train or from along bushes west of the extension landing, the variances of the testimony in that respect are quite immaterial, if taking the testimony as a whole, it appears that plaintiff undertook to board the train after everybody else, including the conductors, had boarded it and it had got in motion pursuant to the signals aforesaid. In that view of the case we need not consider the varying testimony as to whether he was running or walking to catch the train, or whether it was the second or third car he attempted to board, if, when he tried to board it, the train had already been put in motion after the usual signals and under the circumstances testified to by most of the witnesses. If so, then the jury were justified in finding that plaintiff

failed to exercise ordinary care for his own safety, that there was no negligence by defendant, and that plaintiff had no legitimate claim to the relation of carrier and passenger. We certainly cannot, on a full analysis of the evidence, say, as we would have to do in order to reverse on evidence, that the verdict was manifestly against its weight.

Appellant claims reversible error in certain given instructions. Much space is devoted to their discussion. When, as in this case, counsel takes 30 pages to point out to a court of review wherein there is reversible error in two instructions, it is safe to conclude that in all probability the rather strained distinctions made were beyond the comprehension of the jury and not calculated to mislead them. It is somewhat difficult even for us to follow the rather involved, and in some respects, obscure argument.

The principal objections made are to instructions 24 and 27, given at the request of defendant.

The two instructions purport to state the law with respect to what constitutes the relationship between carrier and passenger. After a statement of the law each told the jury that plaintiff could not recover if they believed from the evidence a certain state of facts. Instruction 24 told the jury that mere intention or purpose to become a passenger is not sufficient in law to create the relation, but that it is essential that plaintiff prove not only the intention to take passage on the train but that plaintiff "signified his intention to do so, either by word or conduct and that the servants of the defendant, in charge of the train, assented by words or conduct to his becoming such." It proceeded to state that if the jury believe and find from the evidence "that the servants of defendant, in charge of the train in question, did not know, and were not aware that plaintiff was about to board said train, or was attempting to do so, until after the train had started, and that there was no assent, expressed or implied by

conduct or otherwise on their part to plaintiff becoming a passenger on said train,'' then such relation did not exist at the time plaintiff attempted to board the train and was hurt and he could not recover.

Instruction 27 made much the same statement of the law as to the necessity of the carrier's assent, expressly or impliedly, to a party presenting himself as a passenger before he could become such. In the latter instruction the jury were told that:

''If you believe and find from the evidence, that plaintiff, at the time of the occurrence in question, was familiar with the manner in which defendant operated its trains at the place in question, and with the manner and conduct of its train crews while passengers were being discharged and received on its trains, while its trains were standing at its station platforms, and the means or method of signalling its trains to proceed and when such signals are usually given, and the conduct of the train crew then and immediately thereafter and the starting of the trains thereupon; and if you further believe from the evidence, that at the time plaintiff attempted to board and enter the train, the train crew had boarded the same and that they did not know and were not aware that plaintiff was about to board the train, or was attempting to do so, until after the train had started, and that there was no express or implied assent on the part of the train crew, or any of them, to plaintiff becoming a passenger on said train in question and no holding out, either expressly or impliedly, of an invitation to plaintiff to board said train, under all the facts and circumstances shown by the evidence, then you are instructed that the relation of carrier and passenger between plaintiff and defendant as to the particular train in question did not exist and that plaintiff cannot recover in this case.''

So far as the instructions attempt to state the law as to such relationship they conform to authorities on the subject. (See *Todd v. Louisville & N. R. R. Co.*,

274 Ill. 201, and *Chicago & E. I. R. Co. v. Jennings,* 190 Ill. 478, and cases there cited.)

Appellant concedes that there are cases where the rule of assent as stated in these instructions on the part of the servants of the carrier is proper and applicable, but contends the rule does not present a proper test in the instant case.

In his criticisms counsel takes certain phrases and sentences from each instruction and places an interpretation on them regardless of their connection with the rest of the instruction, or other instructions, whereby their meaning and application are distorted. It is a fundamental rule that all of the instructions must be read as a series and construed and interpreted together, and the jury were so instructed at plaintiff's instance. Counsel conceded in many parts of his argument that these instructions were based practically on uncontroverted facts, and recognizes that the controlling issue of fact, which with others the jury were left to find, is whether plaintiff attempted to get on the train after it started.

The cause of action is predicated upon the allegation in each count that plaintiff became and was a passenger at the time of the injury, and unless he proved that relationship existed at the time of the injury he could not recover. For there was no charge of negligence otherwise than in the failure to exercise that degree of care required when such relationship exists, and an instruction defining the same was given at plaintiff's request. In other words, plaintiff relied upon the contractual relation of carrier and passenger. To establish it, proof of two things is ordinarily necessary, an offer by the prospective passenger to be carried, and an acceptance of such offer by the carrier. (See *Todd* and *Jennings* cases, *supra.*) When the facts are disputed, or different inferences may reasonably be drawn from the evidence, it becomes a ques-

tion for the jury whether these two essential elements of the relation existed. In view of the pleadings and evidence here it was unquestionably proper to submit to the jury the law as to the relationship and whether or not upon such state of facts there was an offer and an acceptance. As applied to the evidence and conceded facts in this case we fail to see any misstatement of the law in these instructions or anything therein that was calculated to mislead the jury in determining whether such relationship existed.

Counsel says that neither these instructions nor any others given at defendant's instance bear upon the issue of defendant's negligence. The negligence relied upon in the declaration is that which results from a breach of the carrier's duty when the relationship of carrier and passenger exists. If it did not exist then under the declaration no question of negligence by defendant need be considered. Plaintiff's right to recover is limited to the negligence charged in his declaration. (*Chicago City Ry. Co. v. Bruley,* 215 Ill. 464; *Lyons v. Ryerson & Son,* 242 Ill. 409.) The declaration does not charge a breach of duty to create the relationship on the offer of plaintiff to become a passenger, but an alleged breach of duty after an offer has been made and accepted.

That plaintiff attempted to board the train and intended to become a passenger, and that at the time he attempted to board it the train was no longer open for the reception of passengers are undisputed facts. Plaintiff's own testimony shows that he did not attempt to step on the train until all others waiting to board it and the crew had got on. Familiar as he was with the methods of signaling for the train to start and that those signals were given before the conductors stepped aboard it, he must, in view of his own testimony, have known the train was due to start and that no passengers were expected at the time he

attempted to board it. There was no evidence that he did anything to signify an offer to become a passenger before all that had taken place, and therefore nothing on which notice to the officials of the train could be predicated. There is no claim that they had even seen him approaching. His own counsel admits in his brief that none of the train crew had any knowledge or was aware before the train started, that he was boarding, or attempting to board it, or that he was even about to board the train before it started, and states that "the jury necessarily so found." In this state of facts it is difficult to see how there was anything in the evidence upon which plaintiff could predicate an offer on his part to become a passenger.

But if there was an offer, it being conceded that the members of the crew were not aware of plaintiff's presence or of his attempt to board the train, and that he was familiar with the customs as to starting it and their signaling for the start before they stepped aboard, and that he knew the conductor of the car he attempted to board had already boarded it before he attempted to do so, and further conceded that it started without their knowledge of his attempt to board it, then it would seem too clear for argument that those circumstances indicate that the so-called offer was never accepted.

On somewhat analogous facts bearing on this point it was said in *Todd v. Louisville & N. R. R. Co., supra,* that while there was some conflict in the testimony whether the train was moving at the time Todd first tried to get on "there is no controversy that the employees in charge of the train never assented, either expressly or impliedly, to his becoming a passenger on the train." The instructions complained of left the jury free to consider everything that the plaintiff did by word or conduct, whether he signified his intention and whether defendant's servants did anything that

could be construed as an assent to his becoming a passenger, and on the above state of facts we fail to see how they could find otherwise than they did.

Plaintiff seems to argue that because the stopping of the train was an implied invitation to those *present* to board it, his attempt to board it regardless of the attendant circumstances properly signified his intention. But the jury might properly have considered from the evidence that plaintiff was hurrying to catch the train after it started and so was not present in the sense that theory of the law implies, but that if he was, the invitation so extended was withdrawn before he attempted to board the train, in view of the conceded circumstances under which it was started up before he attempted to board it. It certainly cannot be said that defendant expected plaintiff as a passenger if he undertook to get on under such circumstances after the train had started.

We have considered the numerous criticisms of these instructions, and have attempted to meet them in a general way without detailing them, and think it is enough to say that we fail to see wherein there was the omission of any essential element of the law or of any evidentiary fact pertinent to their conclusions that was calculated to mislead the jury. Most of appellant's cases involve entirely different states of facts and questions, and the rulings as bearing thereon are not inconsistent with the law stated in these instructions.

Nor are these instructions inconsistent with others given for plaintiff with reference to an implied invitation in the stopping of the train to those present and intending to take passage thereon. The jury must have adopted defendant's theory of the evidence that plaintiff was not present with those on the platform when the invitation was extended, and if he was, the implied invitation under the circumstances was withdrawn. We think his own testimony fails to bring him

within the general rule that the prospective passenger must put himself in the care and control of the carrier in such manner that the carrier will understand and know that he is in its care and control before any assent can be implied, and that the relationship cannot exist except there be such assent on the part of the carrier. (*Jennings* case, *supra*, p. 484.)

Instruction No. 15 told the jury the burden of proof was on plaintiff and that to recover he must prove, by the preponderance of the evidence, "all matters of fact necessary to be established to entitle him to recover, as stated in these instructions," and that there could be no recovery if he failed to make such proof. Counsel's criticism is that the jury was not clearly informed what matters of fact were necessary to be established to entitle plaintiff to recover, although his own instruction No. 1 stated what the issues were, and his instruction No. 11 covers all the necessary facts in the case and directs a verdict in his favor if they were established. In view of his own instructions we see little ground for this criticism. The instruction is not, as intimated, at all analogous to disapproved instructions which tell the jury that plaintiff must prove all the material allegations of his declaration, leaving the jury to determine what are material.

The main criticism of instruction No. 18 is that it submitted to the jury findings of not ultimate facts in the case, and seems to be based on the theory that the instruction is one directing a verdict. It not only is not one of that character, but as instruction No. 8, given in plaintiff's behalf, contains the same alleged defect he cannot complain. (*Thomas v. Chicago Embossing Co.*, 307 Ill. 134.)

Complaint is made that instruction No. 17 so far as it defines the term "negligence" is inapplicable to defendant. Taking the instructions together, we think the definition there given was plainly intended to apply

only to the care which should be exercised by plaintiff. If it is subject to criticism as applied to defendant then plaintiff's instruction No. 10 is subject to the same criticism.

One of plaintiff's witnesses testified that about 8 o'clock the night before he testified, which was in July, 1929, 14 months after the accident, he stood on a brick pavement about 100 or 120 feet west of defendant's tracks and a short distance north of Park Avenue and made observations, looking in a northeasterly direction. Plaintiff offered to show by the witness that because of intervening bushes one of defendant's witnesses could not have seen from near the same point all that he testified to have seen at the time of the accident, May 21, 1928. The offer was rejected mainly, as it would appear, because the conditions for visibility were not the same. Plaintiff admits in his argument that he could not have shown that the bushes had not grown some in the year that had elapsed and that the foliage in July is, as a matter of common knowledge, more dense than in the latter part of May. We think it was plain that what plaintiff offered to prove was not sufficient to show that the conditions were the same, and, therefore, that the testimony would have no legitimate tendency to impeach defendant's witness.

After a careful review of the evidence and instructions, we do not see that there was reversible error. The judgment is affirmed.

*Affirmed.*

SCANLAN and GRIDLEY, JJ., concur.